Walter C. KELLOGG, Trustee,

v.

Elizabeth G. CHESTER, Debtor.

Civ. A. No. 3–86–1826–H.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 23, 1987.

Daniel C. Stewart, Christopher Simpson, & Jay Madrid, Winstead McGuire Sechrest & Minick, Dallas, Tex., for Kellogg.

Herman A. Lusky, Dallas, Tex., for Chester.

## MEMORANDUM OPINION AND ORDER

SANDERS, Acting Chief Judge.

Before the Court are the Trustee's Motion for Partial Withdrawal of Reference filed July 8, 1986, his Brief in Support filed the same date, and his Supplemental Brief filed December 2, 1986. The Trustee seeks a partial withdrawal of the reference of the underlying bankruptcy case to the bankruptcy court for the purpose of obtaining a determination by this Court of the Trustee's Motion to hold the Debtor in Contempt, filed July 8, 1986. He seeks a determination by this Court because he doubts the power of a bankruptcy judge to issue an order of contempt. By Order of this Court, filed October 31, 1986, the parties were directed to file by November 14, 1986 any briefs they wished the Court to consider on the issue of whether a bankruptcy court may issue a contempt order. No such briefs other than the Trustee's Supplemental Brief have been filed.

The Court concludes that Trustee's Motion for Partial Withdrawal should be **DE-NIED**. Decision of that motion involves two main issues: (1) whether a bankruptcy court has the power to issue a contempt order under the applicable federal statutes; and (2) whether any such statutory grant of power is consistent with federal constitutional constraints. The Court concludes that a bankruptcy court does have statutory authority to issue a civil contempt order and that the statutory grant is consistent with the constitution.

■ The statutory and constitutional authority of a bankruptcy court to issue an order of contempt has been subject to uncertainty since the Supreme Court's opinion in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Recent developments in the applicable statutory law establish that a bankruptcy court has such statutory authority. Consideration of the instant motion begins with 11 *U.S.C.* section 105 as recently amended. *See* Bankruptcy Judges, U.S. Trustees, and Family Farmer Bankruptcy Act, Pub.L. No. 99–554, 1986 *U.S.Code Cong. & Ad. News* (100 Stat.). That section contains a broad grant of power to bankruptcy courts to issue any order, process, or judgment necessary or appropriate to carry out the

provisions of title 11, including "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 *U.S.C.* at § 105(a). Issuance of a civil contempt order is certainly "appropriate to enforce or implement" a bankruptcy court order and is therefore clearly within the initial grant of section 105. The Court concludes that 11 *U.S.C.* section 105 in the first instance grants to bankruptcy courts the power to issue final orders of contempt insofar as such orders are necessary or appropriate to carry out the provisions of title 11.

More troublesome is whether this grant exceeds constitutional limits on Congressional delegations of judicial power to non-Article III judges. At least one court has construed the applicable federal statutes to deny contempt power to bankruptcy judges because of that court's conclusion that such a delegation would be unconstitutional. *See In re Continental Air Lines, Inc.,* 61 B.R. 758, 773–75 (S.D.Tex.1986). Consideration of the constitutional issue must be guided by the Supreme Court's opinion in *Marathon. See* 458 U.S. 50, 102 S.Ct. 2860. In that case the appellant, Northern Pipeline, had filed a claim in bankruptcy court against the debtor, Marathon Pipe Line, based on state contract law. Marathon sought dismissal of the claim, arguing that a bankruptcy judge lacked the life tenure and protection from salary diminution afforded by Article III and that a bankruptcy judge therefore could not constitutionally determine matters within the Article III federal judicial power, that is, matters arising under state law or federal constitutional law. The Supreme Court agreed with this argument, stating that "the essential attributes of [Article III] judicial power" must be retained in Article III tribunals. 458 U.S. at 77. Congress could create adjuncts to the district courts with authority to adjudicate rights created by Congress, but Congress could not confer on those adjuncts the authority to finally determine state-created or constitutional rights. 458 U.S. at 76–87, 102 S.Ct. at 1874–80.

■ At this point return to 11 U.S.C. section 105 is appropriate. That section further provides that the powers of a bankruptcy judge under title 11 are subject to 28 *U.S.C.* section 157. 11 *U.S.C.* § 105(c). Section 157 in its present form was enacted in response to *Marathon* and was designed to give bankruptcy judges the greatest possible powers in order to fulfill their functions under title 11 while preventing any invasion into areas reserved by the constitution to Article III judges. *See* legislative history at 1984 *U.S. Code Cong. & Ad. News* 576–606 *passim.* Section 157(b)(1) gives bankruptcy judges authority to hear and determine all cases under title 11 and all "core proceedings" arising under title 11 or in a case under title 11 and to enter appropriate orders and judgments with respect to such cases and core proceedings. Section 157(b)(2) sets forth a list, which it states to be nonexclusive, of matters that are core proceedings. Contempt is not among the matters listed; neither is it expressly excluded, as are unliquidated personal injury and wrongful death claims. Insofar as the issue of whether contempt is a core matter remains doubtful under the applicable statutes, and based on the legislative history of section 157 cited above, this Court agrees with its sister court in *In re Continental* that decision of this statutory issue is tied to the question of whether the power of contempt may constitutionally be granted to bankruptcy judges. *See* 61 B.R. 758. Unlike the court in *In re Continental,* however, this Court concludes that such a grant is constitutional and accordingly that civil contempt is a core matter within section 157.

This conclusion follows from examination of the *Marathon* opinion together with the nature of civil contempt. As stated above, the Supreme Court in *Marathon* drew an important distinction between matters arising under state or constitutional law, which may not be finally determined by a non-Article III judge, and matters arising under Congressional enactments, which may be. With respect to the latter, the Supreme Court explained that

when Congress creates a statutory right, it clearly has discretion, in defining that

right, to create presumptions, or assign burdens of proof, or prescirbe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense, affect the exercise of [Article III] judicial power, but they are also incidental to Congress's power to define the right that it has created.

458 U.S. at 83, 102 S.Ct. at 2878. This Court is of the opinion that civil contempt invoked for the purpose of enforcing a proper bankruptcy court order is of the same genus as the other matters described by the Supreme Court as "incidental" to rights created by Congress.

The distinction between civil and criminal contempt should not be ignored. The distinguishing features of civil contempt are, first, that civil contempt is predicated on a refusal to do a commanded act, as distinguished from commission of a prohibited act. *Skinner v. White,* 505 F.2d 685, 688 (5th Cir.1974). An order of civil contempt is conditional and may be purged; that is, the sanction imposed is remedial and compensatory rather than punitive and comes to an end when the contemnor has complied with the underlying order. *Id.* at 688–89; *In re Timmons,* 607 F.2d 120, 124 (5th Cir.1979). In contrast, an order of criminal contempt imposes a fixed, unconditional punishment. *In re Timmons,* 607 F.2d at 124; *United States v. Rizzo,* 539 F.2d 458, 462–63 (5th Cir.1976). An alleged contemnor must have had knowledge of the order on which civil contempt is to be based. *Douglas v. First Nat'l Realty Corp.,* 543 F.2d 894, 897 (D.D.C.1976). The level of knowledge required, however, is not high. Intent or good faith is irrelevant. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191–92, 69 S.Ct. 497, 499–500, 93 L.Ed. 599 (1949).

At least one court that has expressly considered the nature of civil contempt, as distinguished from criminal contempt, has held that it is a core matter that may constitutionally be determined by a bankruptcy court. *See Better Homes v. Budget Service Co.,* 52 B.R. 426, 429–31 (E.D.Va.

1985); *see also In re Damon,* 40 B.R. 367, 374 (Bankr.N.Y.1984) (intent irrelevant to civil contempt; bankruptcy court has civil contempt power); *In re Ashby,* 36 B.R. 976, 978 (Bankr.Utah 1984) (debtor subject to contempt even if it acted in good faith (power of bankruptcy court to issue contempt presumed)). This Court agrees. Assuming that the underlying order properly issued, consideration by a bankruptcy court of a civil contempt motion will encompass only two issues: whether the alleged contemnor knew of the order and whether he complied with it. Decision of these two issues would involve no determination of private rights under non-bankruptcy law. On the other hand, the issue of whether the alleged contemnor substantially complied with the underlying order may well raise questions as to the nature, contents, and meaning of the underlying order, whether the alleged contemnor knew of it, and whether his conduct complied with it, which questions are well within the special knowledge and expertise of the bankruptcy court.

A few courts have addressed the question of whether a bankruptcy court has the power of contempt and have concluded that it does not. *See In re Continental,* 61 B.R. 758; *In re Industrial Tool Distributors, Inc.,* 55 B.R. 746 (N.D.Ga.1985); *In re Omega Equipment Corp.,* 51 B.R. 569 (D.D.C.1985). These opinions either contain no analysis at all, *see In re Industrial Tool,* or else fail to consider the nature of civil contempt or the respects in which it differs from criminal contempt, *see In re Continental; In re Omega.* Courts in the latter opinions state that the exercise of contempt power involves decision of rights under nonbankruptcy law; but this Court does not see how this result could occur except in a criminal contempt proceeding. *See In re Continental,* 61 B.R. at 774; *In re Omega,* 51 B.R. at 574. Another argument raised is that a final determination of contempt by a bankruptcy court would be subject to review only under a clearly erroneous standard. *See id.* But again, given the nature of the issues relevant for civil

contempt, the Court does not see why that standard is inappropriate.

This Court's decision that bankruptcy courts have statutory and constitutional authority to issue civil contempt is further supported by the final version of proposed Bankruptcy Rule 9020.[1] *See* Proposed Rules accompanying letter dated June 23, 1986 from the Hon. Morey L. Sear, Chair. of the Advisory Comm. on Bankr. Rules, to the Hon. Edward T. Gignoux, Chair. of the Standing Comm. on Rules of Prac. and Pro. This final version has been proposed by the Judicial Committee for approval by the Supreme Court and adoption by Congress. Telephone conversation with Ted Donovan, Ass't Chief of the Bankr. Div. of the Admin. Off. of the U.S. Cts. (Jan. 14, 1987). The proposed rule reads:

*Rule 9020.   Contempt Proceedings*

(a) *Contempt committed in presence of bankruptcy judge.*   Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge....

(b) *Other contempt.*   Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice.   The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil....

(c) *Service and effective date of order; review* ...   The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b)....

Proposed Rule 9020 reflects the long-standing recognition that sound judicial administration requires that a bankruptcy court make the initial determination of whether its order has been violated.   *See* Comm.

Note to Proposed Rule 9020.   The Court is of the opinion that proposed Rule 9020 in its final form sets forth valid procedures and limitations for the exercise of civil contempt power by bankruptcy courts.   The Court would consider proceedings in accordance with the provisions of that rule to be valid and proper, unless the rule had been superseded by newer national or local authority.   The Court does not at this time decide whether a bankruptcy court may constitutionally issue an order of criminal contempt.

Even though the Court concludes that a bankruptcy court may enter a final order of civil contempt, the Court nonetheless has discretion to partially withdraw the reference to the bankruptcy court in order to hear and determine a contempt motion. *See* 28 *U.S.C.* § 157(d).   In the instant case, however, the Court is not required to do so; and the Court perceives no reason for doing so.   In accordance with all of the considerations discussed above, therefore, the Trustee's Motion for Partial Withdrawal is DENIED.

SO ORDERED.

---

**1.** Existing Rule 9020 is not relevant to the instant appeal because it concerns only criminal contempt.   *See* 11 *U.S.C.* Rule 9020.   In addition, the effectiveness of existing Rule 9020 is uncertain insofar as that rule invokes 28 *U.S.C.* § 1481, which has been repealed.