**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Norman D. REVIE,
Defendant-Appellant.**

**No. 86–2968.**

United States Court of Appeals,
Fifth Circuit.

Dec. 21, 1987.

---

Michael Maness, Houston, Tex., for defendant-appellant.

John R. Braddock, James R. Gough, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and GEE and RUBIN, Circuit Judges.

GEE, Circuit Judge:

Norman Revie appeals a decision of the district court adjudicating him in criminal contempt for willfully disobeying a show cause order issued by the bankruptcy court. We conclude that the district court was not clearly erroneous in its determination of Revie's guilt and therefore affirm.

Revie's refusal to obey an order to show cause why he did not turn over to the trustee of Shearn Moody's bankrupt estate a valuable 1879 four dollar gold coin has given rise to this appeal. As administrative assistant to Shearn Moody, Jr., Revie occupied an office in a house in Galveston formerly owned by Moody's mother. An 1879 "coiled hair 10 struck gold stella" was kept in a storage room adjacent to Revie's office. Bankruptcy Judge Letitia Taitte Clark[1] conducted hearings and determined that Revie had possession of the valuable coin. On March 4, 1986, Judge Taitte ordered Revie to turn over personally the gold coin to the trustee of Moody's bank-

---

1. Elsewhere throughout this opinion Judge Clark will be referred to by the surname she held throughout the matters involved in this appeal and before her recent marriage.

rupt estate by 5:00 p.m. on March 7, 1986. Revie did not comply with the order.

On March 11, 1986, Revie noticed an appeal of the turnover order, but he sought no stay of further proceedings concerning the matter in the bankruptcy court. Later, Judge Taitte ordered Revie to show cause why he should not be held in civil contempt for his failure to turn over the coin. The order directed that Revie "shall appear" before the bankruptcy court on April 16, 1986 at 2:00 p.m.[2]

Although Revie contends that he did not receive written notice of the hearing until several months later, his attorney, Louis Dugas, received timely telephone notice of the hearing from the bankruptcy court's clerk. At the trial for criminal contempt, Dugas testified that he informed Revie of the hearing by phone. When he spoke with his client, Dugas neither knew where his client was nor advised Revie whether or not he should appear for the hearing. In fact, at the time of the conversation Revie was attending depositions of his former employer, Shearn Moody, Jr., in Washington, D.C. On April 14th, lawyers at the deposition hearing attempted to accommodate Revie's schedule, noting that the examination involving Revie could commence at a time that did not conflict with Revie's obligation to be in Houston on April 16 for the contempt hearing.[3]

Revie did not attend the contempt hearing. In response to Judge Taitte's inquiry as to Revie's absence at the hearing, Dugas indicated that he did not know why Revie was absent. Judge Taitte issued a second Order to Show Cause commanding Revie's appearance on April 22, 1986.[4] Revie failed to appear for the second time, and Judge Taitte certified facts to the district court

---

2. This first Order to Show Cause stated that: Norman D. Revie shall appear at 2:00 o'clock p.m. in Court #3 on the 16th day of April, 1986 to show cause why he should be held in contempt [sic] for failure to comply with this Court's Decision and Order on Complaint to Compel Turnover of Property, entered on March 4, 1986, which specifically ordered Norman D. Revie to turn over personally the 1879 "Coiled Hair 10 Struck" coin personally to W. Steve Smith, Trustee or his counsel on or before 5:00 p.m. on March 7, 1986.

It is noteworthy that this Order failed to insert a "not" at a critical place in the order: it should have directed Revie to show cause "why he should *not* be held in contempt." This error, however, was remedied in the second Order to Show Cause issued on April 16, the day Revie failed to appear in response to the first order.

3. The record indicates that Dugas received a telephone call from Revie the day before April 16, 1986, at which time Dugas discussed with Revie for the first time the contempt proceeding in Houston. Record II:63. At trial, Dugas suggested that Revie already had notice of the hearing.

Q. So, during your conversation on what you believe to be the day before April 16th, did Mr. Revie tell you that he knew about the order requiring his appearance on April 16?
A. We talked about it, so I assumed that from our conversation he knew about it.
Q. Tell us what you remember about the conversation?
A. I remember very little about the first conversation. And I, as I said just a moment ago, assumed that Mr. Revie would be there on the 16th.

Q. So, at the end of that conversation, it was basically left that you were going to meet him there at Judge Taitte's courtroom the morning of the 16th, then?
A. That was my understanding.
Record II:64.

If Dugas did talk with Revie for the first time on April 15 regarding the hearing, then Revie had prior notice of the hearing from another source, as demonstrated by the fact that attorneys at the Washington deposition discussed the matter with Revie on April 14. The date of Dugas's conversation with Revie is unclear, however, because of statements made by Dugas at the April 16 hearing indicating that he spoke with Revie about the hearing set for April 16 the day after the court clerk called Dugas to notify him of the hearing. The record indicates that the court clerk made the telephone call to Dugas on April 8.

4. The second order states in pertinent part:

ORDER TO SHOW CAUSE

By previous Order to Show Cause entered on April 7, 1986, Norman D. Revie was ordered to appear on April 16, 1986, to show cause why he should not be held in contempt for failure to comply with this Court's Order of March 4, 1986, ordering him to turn over to the Trustee valuable property of the estate, to wit, a rare gold coin.

Although duly notified by telephone and served by mail with the April 7, 1986 Order to Show Cause, Norman Revie *failed to appear before the Court* on April 16, 1986.

At the hearing on April 16, 1986, in view of the seriousness of any finding of contempt for violation of an order of turnover in bankruptcy proceedings, the Court set an additional

supporting a finding of criminal contempt against Revie. The district court judge issued orders for Revie's appearance on May 15 and again June 11, 1986. Revie appeared for neither hearing, and an order for his arrest issued.

A United States Marshal in Washington, D.C. went to the hotel where Revie was reported to be having lunch between 1:00 and 2:00 p.m. on July 17, 1986. The Marshal approached the table where Revie was seated, made inquiries, and returned to the registration desk to check a room registration. Upon returning to the dining room, the Marshal noticed that the suspect had decamped. A chase ensued and Revie was apprehended.[5]

The district court adjudicated Revie guilty of criminal contempt for willfully disobeying the order to show cause and sentenced him to incarceration for a period of six months. Revie appeals this judgment of the district court.

### Issues on Appeal

Revie argues that the district court erred in its finding of guilt beyond a reasonable doubt. Appellant also maintains that Judge Taitte lacked jurisdiction to issue the show cause orders and thus that his criminal contempt conviction must be vacated.

### 1. Guilt.

In order to convict of criminal contempt for failure to appear at a show cause hearing, the government must prove beyond a reasonable doubt that the contemnor had notice of a specific order to appear and willfully disobeyed the order. *United States v. Rylander*, 714 F.2d 996 (9th Cir.1983); *In re Rumaker*, 646 F.2d 870, 872 (5th Cir.1980); *In re Weeks*, 570 F.2d 244, 245 n. 1 (8th Cir.1978). Appellant argues that because Judge Taitte's two orders did not direct him to appear "in person" the orders were not specific. This argument lacks merit.

Determining whether or not an order is specific requires a factual inquiry into the reasonableness of the order's specificity, given the context in which it was issued. *United States v. Turner*, 812 F.2d 1552, 1565 (11th Cir.1987). Judge Taitte had is-

---

hearing to provide Norman D. Revie *one more chance* to appear to show cause why he should not be held in contempt. (emphasis added) The date and time were announced in court at the hearing on April 16, 1986. It is therefore

ORDERED that Norman D. Revie shall appear at *8:30 a.m.* o'clock in Court # 3 on the 7th Floor of the U.S. Courthouse, 515 Rusk Avenue, Houston, Texas, on the *22nd day of April, 1986* to show cause why he should not be held in contempt for failure to comply with this Court's Decision and Order on Complaint to Compel Turnover of Property, entered on March 4, 1986, which specifically ordered Norman D. Revie to turn over *in person* the 1879 "Coiled Hair 10 Struck" gold coin to W. Steve Smith, Trustee or his counsel on or before 5:00 p.m. on March 7, 1986."
At the hearing on April 16, 1986, in view of the seriousness of any finding of contempt for violation of an order of turnover in bankruptcy proceedings, the Court set an additional hearing to provide Norman D. Revie *one more chance* to appear to show cause why he should not be held in contempt. (emphasis added).

**5.** The Marshal vividly sketched the chase at trial:
I went back into the dining area and noticed that the plate was still half-full of food but the two subjects had left. The hotel is located in such a way that the only exit for the public is located, you have to go through the lobby. I asked some of the hotel workers had they seen the white gentleman sitting there.
They said: Yes, that he had left and gone through the back door.
At that time, I proceeded through the back door, through a maze of corridors through the kitchen area and I exited the hotel on F Street in the fourteen hundred block. I looked across the street and I saw the subject that I had questioned earlier at the table running around the back of a pickup truck.
The other individual, the white male subject that was sitting there, the younger one, was getting in the driver's side. The subject that was running around the back of the truck didn't see me, but I hollared [sic] across the street: "Freeze." At which time the subject threw—stopped suddenly and threw both his hands up in the air.
I went across the street, grabbed him by the back of his pants and brought him back around to the front of the hotel. In the lobby, where my partner had returned from upstairs after checking out the other individual. We frisked the subject, found a wallet on him, placed him under arrest, put him in the back of our car and transported him to the United States Courthouse. In his wallet was the identification with the name of Norman Revie.

sued an initial show cause order setting a hearing for April 16, 1986, that appellant disobeyed. To give appellant a final opportunity to attend the show cause hearing, Judge Taitte set another for April 22. It is clear that her concern for the seriousness of the sanction that Revie could face for disobeying the initial order led her to schedule the second hearing. This concern of the bankruptcy judge was not only communicated orally by Judge Taitte to Mr. Dugas at the hearing on April 16 but was also put *in writing* in the second Order to Show Cause. Revie's counsel contended at oral argument that Revie should not be expected to divine the conversation between Judge Taitte and Dugas in which Judge Taitte made *clear* her desire that Revie personally attend the second hearing, maintaining that because Judge Taitte's comments were not contained in the second order Revie had no notice that he was required to appear personally. The second order did contain Judge Taitte's command that Revie appear in person when it stated "the court set an additional hearing to provide Norman D. Revie one more chance to appear to show cause why he should not be held in contempt." [6] Any possible confusion regarding whether or not Revie had to appear "in person" was clarified by Judge Taitte's statement in her second order that Revie's absence would be tolerated only once, and thus that "appearance" by counsel—which had already occurred—did not suffice.

The district court determined that Revie had knowledge of both the first and second show cause orders and willfully disobeyed them. "In fact, Revie himself came to an independent decision that Judge Taitte was without authority to issue the show cause orders. Thus, there is not even the slightest doubt that Revie had the requisite notice of Judge Taitte's orders to comport with the requirements of due process." We must review the factual findings of the trial court under the clearly erroneous standard, considering the evidence in the light most favorable to the government. *United States v. Baker,* 641 F.2d 1311, 1317 (1981).

At each of the show cause hearings, Revie's counsel indicated that he did not know why his client had failed to appear.[7] When asked at trial why Revie did not appear at the April 22 hearing, Revie's counsel responded, "This may be just memory, but I got the impression that he was afraid he would be thrown in the jail." On Monday, April 14, two days before the first show cause hearing, Revie stated to lawyers in Washington that Judge Taitte lacked jurisdiction to issue the show cause order. This statement indicates, as the trial judge concluded, that Revie had made an independent decision that Judge Taitte lacked authority to issue the show cause order.

Any confusion regarding whether Revie had to appear in person at the April 16 hearing was clarified in the second order. Revie's counsel urged us at oral argument to review only two statements at trial that purportedly indicate clearly Revie's lack of knowledge regarding his obligation to appear personally before Judge Taitte's court: (1) Dugas stated that he did not recall whether he had advised Revie that he was required to appear on April 22; (2) after Revie told Dugas he would not attend, Dugas told Revie that he would appear on his behalf in accordance with 28

**6.** See, *supra,* note 4.

**7.** The transcript of the April 16 hearing included the following statements:

> The Court: All right, Mr. Dugas, I don't see the defendant Norman Revie present in the courtroom.
> Mr. Dugas: He should be arriving, Your Honor.
> The Court: What do you know about his failure to appear?
> Mr. Dugas: I don't know. I talked with him when I got the telephonic message about

> the court's order. And that's the last contact I have had with Mr. Revie.

> The transcript of the April 22 hearing contains the following exchange:

> The Court: Mr. Dugas, I see Mr. Revie is not present. Do you expect him this morning?
> Mr. Dugas: I don't know, Your Honor.
> The Court: What contact have you had with him?
> Mr. Dugas: I talked with him over the phone.
> The Court: And was he aware of today's proceedings?
> Mr. Dugas: Yes.

U.S.C. § 1654. Whether Dugas advised Revie that he had to obey a clear court order is not determinative of whether Revie had knowledge of the order. In order to conclude, as Revie's counsel urges us to do, that Revie could not be found to have had knowledge of the order "beyond a reasonable doubt" we would be required to deny the use of circumstantial evidence to find guilt in criminal contempt cases. Under such a prescription, unless a witness could testify to having overheard the conversation between attorney and client when the attorney notified his client of a court order, many contemnors would go free based upon the testimony of their attorneys that no advice had been given regarding whether the client should obey the order. There can be no doubt that an attorney of Mr. Dugas' experience well knew that Revie's personal presence was ordered, and the inference that he would—as clearly he should—have acquainted Revie with this critical knowledge is a compelling one.

The second part of the record highlighted by Revie's counsel at oral argument does not demonstrate that Revie did not have knowledge of Judge Taitte's order. It simply indicates that Revie made a decision to not attend the hearing and to send his counsel to appear at the hearing to argue on his behalf. Two inferences can be drawn from the statement: (1) Revie simply misunderstood that he had an obligation to appear in person; (2) Revie decided he was going to disobey the order, and his counsel made assurances that, at the least, he was entitled to argue on behalf of Revie's interests at the hearing, which counsel did. The trial judge would not be clearly erroneous in attaching the second significance to this testimony. Based upon the record evidence and inferences discussed above, we do not find that the district court was clearly erroneous in its determination that Revie had knowledge of the second show cause order.

Revie also maintains that, even if the order was specific, he was entitled to have his counsel appear in his stead. Revie asserts that 28 U.S.C. § 1654 permits such a proxy.

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein. 28 U.S.C. § 1654.

As is clear from the language, this section simply allows parties or their counsel to manage litigation; it does not, however, permit parties to disobey orders of the court. One might as well suggest that any other criminal defendant—say, one accused of bank robbery—need appear only by counsel. Revie had the right under § 1654 to have his lawyer plead and conduct his case at Judge Taitte's hearing. He did not have the right under this section to ignore Judge Taitte's order that Revie *appear* there.

Appellant cites an opinion by Chief Justice John Marshall for the claim that "Natural persons may appear in Court, either by themselves, or by their attorney." *Osborn v. Bank of the United States*, 9 Wheat. (22 U.S.) 738, 829–30, 6 L.Ed. 204 (1824). Taken out of context, this principle might appear to apply in the case before us. The issue in *Osborn*, however, was an archaic one in which the appellant challenged the failure of the court below to observe a formality: because a warrant of attorney under a corporate seal was not produced in a case involving a corporate party, appellant asserted that the decree of the Circuit Court was erroneous. Chief Justice Marshall discussed the unique problem of representation (appearance) on behalf of corporations in an action:

It is admitted that a corporation can only appear by attorney, and it is also admitted, that the attorney must receive the authority of the corporation to enable him to represent it. It is not admitted that this authority must be under seal.

This passage brings to light the context in which the Chief Justice asserted that "[n]atural persons may appear in Court, either by themselves, or by their attorney." The issue was whether the failure to introduce a warrant of attorney under the corporate seal in the prior record was reversible error, not whether the appearance of an attorney on behalf of a person who has

been directed by court order to appear for a show cause hearing suffices.

Appellant also cites a recent case from our Circuit holding that a litigant may "appear" by counsel in a civil proceeding without being physically present. *Broadcast Music, Inc. v. M.T.S. Enterprise, Inc.,* 811 F.2d 278 (5th Cir.1987). In *Broadcast Music,* the court concluded that appearance by counsel on behalf of the clients waived their defense of failure of service of process under Fed.R.Civ.P. 12(h)(1). The case does not address whether appearance of counsel is sufficient to satisfy a specific court order commanding a client's presence at a hearing, and to cite it for such a proposition borders on the disingenuous.

Courts must have control over parties in order to conduct hearings. A party who is fearful that his failure to comply with a turnover order will lead to his incarceration for civil contempt would naturally be less than eager to appear at a hearing being held to underscore his noncompliance. Revie's attorney indicated as much when he testified that it was his impression Revie decided not to attend the second show cause hearing because "he was afraid he would be thrown in jail." Upon order of the court to appear, however, the party must attend or face charges of criminal contempt. Revie knowingly risked the latter sanction, and the district court did not clearly err in imposing it.

2. Jurisdiction.

Revie contends that the bankruptcy judge lacked jurisdiction to order his appearance at the show cause hearing. He argues in this regard: (1) his notice to the district court appealing Judge Taitte's turnover order divested her court of jurisdiction to issue the show cause orders; (2) bankruptcy courts lack jurisdiction *in general* to issue show cause orders without approval of the district court.

a. Effect of Notice of Appeal.

▮ Revie argues that his timely appeal of the turnover order divested the bankruptcy court of "its control over those aspects of the case involved in the appeal."

*Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). In general, disobedience of invalid court orders may be punishable on contempt grounds. *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). An important exception to this rule arises when the issuing court lacks jurisdiction to give the order; in such circumstances, a party may willfully disobey the order without fear of contempt sanction. *Howat v. Kansas,* 258 U.S. 181, 189–90, 42 S.Ct. 277, 280–81, 66 L.Ed. 550 (1922). Our Circuit has upheld this exception on several occasions. In *United States v. Holland,* 552 F.2d 667, 674–75 (5th Cir.1977), we ruled that a person could not be held in criminal contempt for refusing to furnish handwriting samples when the district court commanding compliance lacked jurisdiction over any proceeding involving the party. Similarly, our Court noted in *United States v. Dickinson,* 465 F.2d 496 (5th Cir.1972):

> Of course, the rule that unconstitutional court orders must nevertheless be obeyed until set aside presupposes the existence of at least three conditions: (i) the court issuing the injunction must enjoy subject matter and personal jurisdiction over the controversy....

465 F.2d at 511.

Revie notes that this jurisdictional exception to the general rule allowing contempt proceedings for disobedience of invalid court orders has, in itself, an exception. "Pending a decision on a doubtful question of jurisdiction, [a court has] power to maintain the *status quo* and punish violations as contempt." *United States v. United Mine Workers,* 330 U.S. 258, 292, 67 S.Ct. 677, 695, 91 L.Ed. 884 (1947); *National Maritime Union v. Aquaslide 'N'Dive Corp.,* 737 F.2d 1395 (5th Cir.1984). Revie maintains that the exception applies strictly to situations in which the court is attempting to maintain the status quo through prohibitory judicial decrees, such as preliminary injunctions.

We need not pass judgment on Revie's careful argument set forth above, for it is his initial contention that wants authority.

Whereas the Supreme Court stated in *Griggs* that a district court loses control of aspects of a proceeding involved in an appeal, the court did not address the scope of its general rule. For many years, case law in our Circuit has recognized that a court maintains continuing jurisdiction to enforce a judgment. Until the judgment has been properly stayed or superseded, the district court may enforce it through contempt sanctions. *Farmhand, Inc. v. Anel Engineering Industries*, 693 F.2d 1140, 1145–46 (5th Cir.1982); *Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir.1979). In *Farmhand*, we ruled that the district court retained jurisdiction to supervise its injunction in a patent infringement action if no stay of the injunction had been granted. *Farmhand* relied on our Court's ruling in *Braddick*, which sustained jurisdiction of the district court to hold civil contempt proceedings despite appeal of the district court's judgment.

> Since Braddick failed to ask the district court for a stay pending appeal and to post supersedeas bond as required by F.R.C.P. 62(d), the district court retained power to enforce its order by civil contempt proceedings.

595 F.2d at 965.

In the bankruptcy setting, the rules related to seeking a stay of a proceeding pending appeal (Rules 7062 and 8005) make F.R.C.P. 62(d) applicable with respect to judgments and contested matters. If a district court retains power to enforce its judgments subject to a stay's being issued pursuant to F.R.C.P. 62(d), it must follow that a bankruptcy court retains the similar power to hold a hearing to determine if its order is being obeyed. We do not hold that a bankruptcy court has the power to make an adjudication of contempt; this issue is presently unresolved and is discussed below. Under the holdings of *Farmhand* and *Braddick*, however, we rule that a

bankruptcy court retains jurisdiction to conduct proceedings intended to enforce a turnover order until such time as the enforcement of the order has been stayed.

### b. Validity of Show Cause Orders.

■ In the alternative, Revie contends that even if Judge Taitte maintained jurisdiction to enforce her turnover order, she did not have jurisdiction to *initiate* contempt proceedings as a mechanism for enforcing the order. Rather, Judge Taitte had authority only to certify the fact of Revie's noncompliance to the district court. The district court would then determine whether contempt proceedings were appropriate, given that the merits of the case had been appealed.

Revie correctly notes that the case law in this area reflects great uncertainty regarding the authority of Article I bankruptcy courts to adjudicate cases of civil contempt. A month after Judge Taitte issued her second order to show cause, a federal district court in Texas held that a bankruptcy court has no authority to enter a final finding of civil contempt. *In re Continental Air Lines*, 61 B.R. 758, 773–75 (S.D.Tex.1986). Instead, it concludes, the Article I judge is limited to certifying findings of fact and conclusions of law to the district court pursuant to 28 U.S.C. § 157(c)(1); the Article III court may then make a *de novo* determination of whether the contempt sanction is appropriate. More recently, another federal district court in Texas has disagreed with the *Continental* holding. In *Kellogg v. Chester*, 71 B.R. 36, 37 (N.D.Tex.1987), the court held that the power of contempt may constitutionally be granted to bankruptcy judges "and accordingly that civil contempt is a core matter within section 157." [8]

The issue addressed in *Continental* and *Kellogg* is beyond our concern in this case.[9]

---

8. 28 U.S.C. § 157 provides that:
   Bankruptcy judges may hear and determine all cases under title 11 and all *core proceedings* arising under title 11.... (emphasis added).

The section sets forth a nonexclusive list of matters that are core proceedings. The power of contempt is not among the matters listed.

9. The *Kellogg* case indicates that the important matter of whether bankruptcy courts have authority to make contempt rulings will be settled soon by proposed Bankruptcy Rule 9020, in

Revie did not violate a final civil contempt ruling of the bankruptcy judge; rather, he willfully disobeyed a show cause order. Judge Taitte issued two orders to show cause in order to assess whether or not Revie should be found in civil contempt for failure to turn over the gold coin. Whether adjudication of that assessment could be made by the bankruptcy judge or after *de novo* review by a district court judge is not determinative of the outcome in this case. We need decide only the narrow issue of whether bankruptcy judges have the power, absent explicit delegation from a district court, to determine whether their orders are being obeyed.

Revie maintains that Judge Taitte did not have the authority to conduct the show cause hearings. He urges us to hold that, because adjudication of contempt is not a "core proceeding," initiation of any hearing whatever related to a contempt finding is beyond the jurisdiction of the bankruptcy court. The Bankruptcy Code does not place such a shackle on the wrists of Article I judges. 28 U.S.C. § 157(b) allows bankruptcy judges to enter judgments in "core proceedings;" 28 U.S.C. § 157(c) instructs that in non-core proceedings, related to a case under title 11, bankruptcy judges may submit proposed findings of fact and conclusions of law to the district court. In *both* situations the statute provides that bankruptcy judges "may hear" proceedings. The statute does *not* say that bankruptcy judges may "hear only" when told to do so by district court judges. Once the district court provided that a bankruptcy judge would hear Shearn Moody's case (28 U.S.C. § 157(a)), the bankruptcy judge had authority to hear a proceeding related to the case. A proceeding to show cause why a turnover order had not been obeyed falls within the authority granted in 28 U.S.C. § 157. Few functions are more essential to conducting a court than maintaining order and enforcing attendance.

After exhausting the legal arguments in his brief, Revie asserts that the show cause hearings were unnecessary: "All [Judge Taitte] need have done was to certify the fact of Revie's noncompliance to the district court. Had she done so, an altogether incredible waste of judicial time and resources might have been avoided." Although frustration with judicial process may, at times, elicit sympathy from us, this contention of Revie's can only be weighed as mocking irony. The "incredible waste of judicial time" in this matter lies not with Judge Taitte's orders; it lies with Revie's recalcitrance in the face of such repeated orders.

The decision of the lower court finding Revie guilty of criminal contempt is

AFFIRMED.

which Congress will explicitly grant that author-

ity in specified circumstances.