PER CURIAM.
After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
This appeal raises two primary issues: whether bankruptcy courts have authority to exercise civil contempt powers and enter sanctions for civil contempt and, if so, whether the imposition of sanctions by the bankruptcy court in this case was appropriate. We answer both questions in the affirmative.
On December 11, 1987, the bankruptcy court entered sanctions against appellant Mountain America Credit Union pursuant to 11 U.S.C. § 362(h), for violating the automatic stay by selling debtors-appellees’ car after the bankruptcy petition was filed. Appellant appealed the order to the district court, arguing that sanctions were inappropriate under section 362(h) because the violation was not “willful.” [1] The record on appeal does not reflect that appellant challenged the amount of the sanctions.
On appeal, the district court concluded that the facts found by the bankruptcy court did not support the imposition of sanctions under section 362(h) for a willful violation of the stay. Utah State Credit Union v. Skinner (In re Skinner), 90 B.R. 470, 475 (D.Utah 1988). The court discussed the availability of sanctions under 11 U.S.C. § 105, however, and concluded both that the bankruptcy court had authority to enter sanctions for contempt under that section, id. at 476-77, and that such sanctions would be appropriate under the circumstances, id. at 479-81. The district court vacated the bankruptcy court’s order and remanded the action to the bankruptcy court “with instructions to impose civil contempt sanctions, within its discretion, in accordance with this memorandum decision.” Id. at 481.
On remand, the bankruptcy court held an evidentiary hearing concerning sanctions against appellant under section 105. On December 20, 1988, the court entered an order finding appellant in contempt and imposing sanctions against it in the amount of $3,500.00 compensatory damages and $4,721.12 attorneys' fees and costs.
Appellant appealed this second order to the district court, challenging the authority of the bankruptcy court to exercise civil contempt power under section 105. The record on appeal does not reflect that appellant challenged the amount of the sanctions. The district court summarily affirmed the bankruptcy court’s order since the only issue raised by appellant was one which the district court had addressed in the prior appeal. The district court stated that its order constituted a final order. Appellant then filed a timely notice of appeal from this order.
I. Scope of Review
As an initial matter, we must define the proper scope of review of the issues raised by appellant in this appeal. Appellees contend that the only issues we may review are those that concern the district court’s second order from which appellant filed a notice of appeal, and that we should not review any issues that concern the district court’s first order. We disagree.
The district court’s first order was not final and, therefore, not appeal-able, because it remanded the action to the bankruptcy court for further significant proceedings. See Homa Ltd. v. Stone (In re Commercial Contractors, Inc.), 771 F.2d 1373, 1375 (10th Cir.1985). The district court’s second order was final and appealable, and appellant’s appeal from that order raised all prior orders of the district court. Since appellant never appealed the issue of the amount of sanctions to the district court, however, appellant cannot raise that issue for the first time on appeal to this court. See Gillihan v. Shillinger, 872 F.2d 935, 938 (10th Cir.1989). *447 Therefore, the only issues before this court are whether the bankruptcy court had authority to enter sanctions against appellant for civil contempt[2] and, if so, whether the imposition of sanctions was appropriate under the circumstances.
II. Statutory Authority to Exercise Civil Contempt Power
While bankruptcy courts do not have inherent civil contempt power, see Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd.), 827 F.2d 1281, 1284 (9th Cir.1987), we conclude that Congress has granted them civil contempt power by statute. This statutory authority derives from 11 U.S.C. § 105 and 28 U.S.C. § 157. Section 105 provides in pertinent part:
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
Like the Fourth Circuit, “[w]e see no reason to read into th[e] language [of section 105(a)] anything other than its plain meaning that a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code.” Burd v. Walters (In re Walters), 868 F.2d 665, 669 (4th Cir.1989). An order like that entered by the bankruptcy court below, which compensates a debtor for injuries suffered as a result of a creditor’s violation of the automatic stay, is both necessary and appropriate to carry out the provisions of the bankruptcy code and to enforce or implement a previous court order.
When statutory language is not ambiguous, it is controlling. See Roberts v. United States (In re Roberts), 906 F.2d 1440, 1442 (10th Cir.1990); Miller v. Commissioner, 836 F.2d 1274, 1280-85 (10th Cir.1988). While we are mindful of the opinion of the Ninth Circuit in In re Sequoia Auto Brokers, Ltd., 827 F.2d at 1289-90, that civil contempt powers should not be implied from section 105(a), based on the legislative history of the bankruptcy statutes, we disagree that the language of section 105(a) is ambiguous, and, therefore, we do not think the Ninth Circuit’s reasoning is sufficient to overcome the plain language of the section. See In re Walters, 868 F.2d at 669.
Furthermore, the weight of authority supports our holding that section 105(a) empowers bankruptcy courts to enter civil contempt orders. See, e.g., Id.; Kellogg v. Chester, 71 B.R. 36, 37 (N.D.Tex.1987); Better Homes of Va., Inc. v. Budget Serv. Co. (In re Better Homes of Va., Inc.), 52 B.R. 426, 428-30 (E.D.Va.1985), aff'd on other grounds, 804 F.2d 289 (4th Cir.1986); Dubin v. Jakobowski (In re Stephen W. Grosse, P.C.), 84 B.R. 377, 385-86 (Bankr. E.D.Pa.1988), aff'd, 96 B.R. 29 (E.D.Pa.), aff'd, 879 F.2d 856 (3d Cir.) (table), cert. denied, — U.S. -, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989); Miller v. Mayer (In re Miller), 81 B.R. 669, 676-77 (Bankr.M.D.Fla.1988); In re Haddad, 68 B.R. at 948-49.
A bankruptcy court’s powers under section 105(a) are limited by the provisions of Title 28. 11 U.S.C. § 105(c).[3] Section 157 of Title 28 provides in pertinent part:
*448 (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
Civil contempt proceedings arising out of core matters are themselves core matters. See Better Homes of Va., Inc., 804 F.2d at 292; Haile v. New York State Higher Educ. Servs. Corp., 90 B.R. 51, 54 (W.D.N.Y.1988); Kellogg v. Chester, 71 B.R. at 38; In re Stephen W. Grosse, P.C., 84 B.R. at 386; In re Miller, 81 B.R. at 677; but see In re Sequoia Auto Brokers, Ltd., 827 F.2d at 1289; Omega Equip. Corp. v. John C. Louis Co. (In re Omega Equip. Corp.), 51 B.R. 569, 574 (D.D.C.1985). Civil contempt proceedings not involving punishment with imprisonment have been referred to the bankruptcy courts in the District of Utah in accordance with 28 U.S.C. § 157.[4] Therefore, the bankruptcy court below had the power to enter monetary sanctions against appellant for civil contempt.[5]
III. Constitutional Authority to Exercise Civil Contempt Power
Although appellant’s challenge to the bankruptcy court’s exercise of civil contempt power concerned only the statutory authority for such exercise, having determined that statutory authority does exist, we must now consider whether the grant of such authority by Congress is constitutional.
Under the Bankruptcy Act of November 6, 1978, Pub.L. No. 95-598, 92 Stat. 2549 (codified as amended at 11 U.S.C. and scattered sections of 28 U.S.C.) (1978 Act), Congress granted the bankruptcy courts sweeping powers, including civil and criminal contempt powers. These powers emanated largely from 28 U.S.C. § 451, which added bankruptcy courts to the definition of “courts of the United States,” and 28 U.S.C. § 1481, which provided:
A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.
As a “court of the United States,” bankruptcy courts exercised the same civil and criminal contempt powers as an Article III court, with the additional limitation on criminal contempt set forth in section 1481.
In 1982, the United States Supreme Court held that the grant of jurisdiction to *449 bankruptcy courts in the 1978 Act was unconstitutional because it impermissibly encroached on the powers of Article III courts by permitting bankruptcy courts to adjudicate private, state-created rights of parties brought before the court involuntarily. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 83-84, 90-91, 102 S.Ct. 2858, 2877-78, 2881-82, 73 L.Ed.2d 598 (1982).[6] Marathon involved a debtor seeking reorganization under Chapter 11 who brought a suit against a creditor for breach of contract, breach of warranty, misrepresentation, coercion, and duress. Id. at 56, 102 S.Ct. at 2864. The creditor sought to dismiss the suit on the ground that the 1978 Act unconstitutionally conferred Article III power upon nonArticle III judges. Id. at 56-57, 102 S.Ct. at 2864.
The Supreme Court held that bankruptcy courts under the 1978 Act were not constitutional if viewed as Article I courts because Article III barred Congress from creating Article I courts “to exercise jurisdiction over all matters related to those arising under the bankruptcy laws.” Id. at 76, 102 S.Ct. at 2874. The Court also held that the bankruptcy courts were not constitutional if viewed as “adjuncts” to Article III courts because the 1978 Act did not retain “ ‘the essential attributes of the judicial power’ ” in the Article III district courts, but rather vested most, if not all, of those attributes in the “adjunct” bankruptcy courts. Id. at 87, 102 S.Ct. at 2880.
In discussing permissible “adjuncts” to Article III courts, the Court said one must distinguish between “rights created by federal statute and rights recognized by the Constitution,” in order to make the “delicate accommodations required by the principle of separation of powers reflected in Article III.” Id. at 83, 102 S.Ct. at 2877-78. The Court continued:
But when Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before the particularized tribunals created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress’ power to define the right that it has created.
Id. at 83, 102 S.Ct. 2878 (Footnote omitted.)
“[T]he right of a bankrupt or a debtor to have his affairs wound up in a court of bankruptcy is a federal right explicitly recognized by the Constitution (Art. I, sec. 8, cl. 4) as well as by Congress.” In re Walters, 868 F.2d at 670. The imposition of an automatic stay by the bankruptcy court is central to the exercise of that right. See Better Homes of Va., Inc., 52 B.R. at 429 (“automatic stay provision of § 362 plays a central role in the administration of the Bankruptcy Code”).
Therefore, we are concerned here with the adjudication of a right created by federal statute, rather than a private, state-created right, like that of concern in Marathon. See In re Walters, 868 F.2d at 670 (“Determining if a party has committed civil contempt involves essentially only consideration of whether the party knew about a lawful order and whether he complied with it. Such a determination does not involve private rights under non-bankruptcy laws and does not offend the Constitution ____”); see also Better Homes of Va., Inc., 804 F.2d at 292; In re Haddad, 68 B.R. at 951; Kellogg v. Chester, 71 B.R. at 38. “[WJhen a bankruptcy court uses civil contempt to enforce a proper order ... such power under [Marathon ] is also ‘incidental to Congress’ power to define the *450 right that it has created.’ ” In re Walters, 868 F.2d at 670.
Furthermore, the delegation of civil contempt power to bankruptcy courts does not “impermissibly remove[ ] ... ‘the essential attributes of the judicial power’ from the Article III district courts and ... vest[ ] those attributes in a non-Article III adjunct,” Marathon, 458 U.S. at 87, 102 S.Ct. at 2880, since the district courts retain the power of de novo review of the bankruptcy courts’ findings of fact and conclusions of law in civil contempt proceedings.[7] See In re Stephen P. Grosse, P.C., 84 B.R. at 387-88.
Therefore, we, like the Fourth Circuit, conclude that “the delegation of civil contempt power to the bankruptcy courts by 11 U.S.C. § 105(a) does not offend the Constitution as in violation of the separation of powers.” In re Walters, 868 F.2d at 670.
IV. Whether Sanctions Were Appropriate
Appellant argues that even if the bankruptcy court below had authority to enter sanctions for civil contempt, the circumstances did not warrant the imposition of sanctions for contempt. We disagree. The bankruptcy court found that appellant had notice of the automatic stay before it sold appellees’ car and that appellant failed to restore appellees to the status quo after it learned the sale was in violation of the automatic stay. These findings were not clearly erroneous, see Bartmann v. Maverick Tube Corp., 853 F.2d 1540, 1543 (10th Cir.1988) (an appellate court “review[s] the bankruptcy court’s factual findings under the clearly erroneous standard”), and they adequately supported the bankruptcy court’s conclusion that appellant was in civil contempt and that sanctions for its contempt were appropriate.
V. Conclusion
We conclude that the bankruptcy court had authority to enter monetary sanctions against appellant for civil contempt and that the entry of such sanctions was appropriate under the circumstances. Therefore, the district court properly affirmed the decision of the bankruptcy court entering sanctions against appellant. The judgment of the District Court for the District of Utah is AFFIRMED. Appellant’s motion for oral argument is DENIED.

. Section 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.” 11 U.S.C. § 362(h).

. "Civil contempt orders serve either or both of two purposes: (1) to compel or coerce obedience of a court order; and (2) to compensate parties for losses resulting from the contemptor's [sic] non-compliance with a court order.” Gibbons v. Haddad (In re Haddad), 68 B.R. 944, 952 (Bankr.D.Mass.1987). Criminal contempt orders, on the other hand, serve the purpose of punishing the contemner for violating a court order. "‘Criminal contempt is a crime in the ordinary sense’ ... and ‘convictions for criminal contempt are indistinguishable from ordinary criminal convictions’____” Griffith v. Oles (In re Hipp, Inc.), 895 F.2d 1503, 1509 (5th Cir.1990) (quoting Bloom v. Illinois, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481-82, 20 L.Ed.2d 522 (1968)). The order at issue here was one for civil contempt only; we express no opinion as to whether bankruptcy courts have authority to enter sanctions for criminal contempt.

. Section 105(c) provides:
*448 The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

. Rule B-105 of the District Court Rules of Bankruptcy Practice and Procedure for the District of Utah provides in pertinent part:
(a) Any and all cases under Title 11 and any and all proceedings arising in or related to a case under Title 11 are referred to the bankruptcy judges for the District of Utah, for consideration and resolution consistent with the law....
(c) This reference does not include the power to punish a contempt, whether criminal or civil, by imprisonment.

. Instead of entering sanctions against appellant itself, the bankruptcy court could have proceeded pursuant to Rule B-113 of the District Court Rules of Bankruptcy Practice and Procedure for the District of Utah, which provides that certain acts or conduct committed in a proceeding before a bankruptcy judge constitute a contempt of the district court, and that "[ujpon the commission of any such act or conduct, the bankruptcy judge may forthwith certify the facts to a judge of the district court____” The rule further provides that the district court shall then “hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment,” may punish the person with appropriate sanctions, including imprisonment.

. In response to the Marathon decision, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (codified in scattered sections of 11 U.S.C. and 28 U.S.C.) (1984 Amendments), which repealed section 1481 and amended section 451 to exclude bankruptcy courts from the definition of “courts of the United States.” The 1984 Amendments also designated bankruptcy courts as “units” of the district courts, 28 U.S.C. § 151, and added the provisions regarding reference of matters to the bankruptcy courts set forth above, 28 U.S.C. § 157.

. Pursuant to Bankruptcy Rule 9020, objections to a contempt order must be filed within ten days of its issuance. If a timely objection is filed, the order will be reviewed as follows:
The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.
Bankruptcy Rule 9033(d).