In re STEPHEN W. GROSSE, P.C. t/a Martin Gorman Dental Pavilion, Germantown Dental Pavilion, Dental Pavilion Dental Dimensions, Dental Dimensions South Street Prof Bldg., Associated Dental Group, Ltd., Barry A. Dubin, DDS and Assoc., Stephen W. Grosse, P.C. Dental Pavilion, Germantown Dental, Girard Dental, Market Street Dental Pavilion, Market Dental, Debtors.

Barry A. DUBIN, Plaintiff,

v.

Frank A. JAKOBOWSKI,
Esquire, Defendant.

Bankruptcy Nos. 83–01694G, 83–01693, 83–01695 and 83–01696.
Adv. No. 84–0297G.

United States Bankruptcy Court,
E.D. Pennsylvania.

April 8, 1988.

Myron Bloom, Steven D. Usdin, Adelman Lavine Gold & Levin, Philadelphia, Pa., for plaintiff, Barry A. Dubin.

Lawrence T. Phelan, Philadelphia, Pa., for defendant Frank Jakobowski.

Frank M. Jakobowski, Philadelphia, Pa., pro se.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

The threshold issue before me for determination is whether the defendant, as attorney for a creditor of the plaintiff, violated the automatic stay and/or an order of this court. If the answer to that question is yes, I must determine the appropriate measure of damages. Pursuant to Bankr. Rule 7052, I make the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The plaintiff, Dr. Barry A. Dubin ("Dubin") is a dentist who filed a voluntary petition in bankruptcy on April 20, 1983.

2. The defendant, Mr. Frank Jakobowski ("Jakobowski") was attorney for Robert Wolk ("Wolk"), a judgment creditor of Dubin. Wolk held a judgment against Dubin, emerging from Dubin's responsibility for a debt of one of his former partners, in the total amount of $3,208.00.

3. Dubin did not list his debt to Wolk on his bankruptcy schedules and did not list Wolk on his mailing matrix.

4. On January 23, 1984, subsequent to the bankruptcy filing, Wolk, by his attor-

ney, began garnishment proceedings by attaching Dubin's business bank account. As of that date neither Wolk nor Jakobowski had notice of Dubin's bankruptcy filing.

5. On January 30, 1984, Dubin's attorney notified Jakobowski by letter and telephone of the existence of Dubin's bankruptcy. Dubin's attorney requested that Jakobowski dissolve the writ of execution.

6. At some point on or after January 30, 1984, Jakobowski told Dubin's attorney that he believed that Wolk was under no obligation to dissolve the writ because Wolk had not been listed as a creditor on Dubin's bankruptcy petition.

7. On February 3, 1984, Dubin's attorney filed a motion for contempt against Wolk in this court. On February 27, 1984,[1] at the hearing on the motion, Wolk appeared without counsel. Former Chief Judge Goldhaber heard testimony and entered an order holding Wolk in contempt and ordering *in terrorem* damages of $200.00 per day for every day beyond March 2, 1984 for which Wolk did not cause the writ to be dissolved.

8. On or about March 1, 1984, Wolk informed the court and counsel for Dubin by letter that he had requested that Jakobowski dissolve the writ and that Jakobowski had refused. Jakobowski testified that although Wolk had informed him of Judge Goldhaber's February 27, 1984 order, Wolk never asked him to dissolve the writ. (N.T. 4/15/87 pp. 86–92).

9. On March 28, 1984, the instant adversary proceeding was filed by Dubin against Jakobowski individually. The complaint sought injunctive relief and damages.

10. Subsequently, on April 26, 1984, a hearing was scheduled on Dubin's motion for injunctive relief. Jakobowski failed to appear and Judge Goldhaber entered a preliminary injunction directing Jakobowski to immediately dissolve the writ. Jakobowski testified in this proceeding that he was precluded from appearing at the hearing because he was testifying on the same day as an expert witness in another matter

---

1. Neither Wolk nor Jakobowski appeared at the initially scheduled hearing on the motion and the hearing was continued to February 27, 1984, at the request of Dubin's counsel.

pending in this courthouse. (N.T. 1/15/87 p. 73).

11. On May 4, 1984, Jakobowski filed a notice of appeal of the order granting a preliminary injunction together with a motion for stay pending appeal. Judge Goldhaber granted a stay pending appeal conditioned upon posting of a bond in the amount of $10,000.00. Apparently, such bond was later posted.

12. Without obtaining relief from the automatic stay, on June 6, 1984 Jakobowski filed a petition for supplementary relief in aid of execution concerning the Wolk judgment against the debtor in the Philadelphia Court of Common Pleas. That petition was subsequently denied.

13. On February 8, 1985, Chief Judge Fullam of this district affirmed Judge Goldhaber's order of April 26, 1984, which required Jakobowski to dissolve the writ.

14. On February 26, 1985, Jakobowski filed a praecipe dissolving the writ of execution without informing Dubin, his counsel or the court of his action.

15. Subsequently, because he was unaware that the writ had been dissolved, Dubin's counsel requested and Judge Goldhaber granted an order declaring the writ to be null and void.

16. The bank account subject to Wolk's writ of execution held Dubin's working capital as of the date his bankruptcy petition was filed. From the date on which the account was frozen until June 17, 1985, when Judge Goldhaber ultimately declared the writ null and void, Dubin made regular attempts to withdraw funds from the account and was precluded from doing so by the existence of the writ.

17. At all times relevant to this action, Jakobowski was aware that he alone could dissolve the writ. (N.T. 4/15/87 pp. 86, 92). From January 30, 1984, Jakobowski had knowledge of the existence of the automatic stay as it applied to Dubin and to property of Dubin's bankruptcy estate.

From, at least February 27, 1984, when Judge Goldhaber ordered Wolk to have the writ dissolved or face contempt sanctions, Jakobowski was aware of his responsibility to dissolve the writ.[2]

18. By failing to dissolve the writ after February 27, 1984, Jakobowski made a deliberate and willful choice to violate the automatic stay. Additionally, by subsequently filing a petition for supplementary relief in aid of execution in state court, Jakobowski further deliberately and willfully violated the automatic stay.

19. Dubin testified that he appeared in this court in this matter on nine dates between 1984 and 1987 and on each date he was forced to cancel numerous dental appointments. In each case however, the appointments were rescheduled. (N.T. 4/15/87 pp. 4, 7, 51–52). Thus, Dubin did not suffer any lost income due to cancelled appointments by reason of his appearances in court.

20. Dubin's payroll during the pendency of this action was approximately $700.00 for a six day work week. On those days when Dubin appeared in court, he had to cancel all appointments but nevertheless pay his employees. (N.T. 4/15/87 pp. 6–7). The wages which Dubin had to pay on nine days when his office was effectively closed by his absence to appear before the court in this matter constitute $1,050.00 and are an appropriate element of compensatory damages.

21. Dubin failed to establish that a security deposit required by his landlord was caused by Jakobowski's actions or that he was harmed by the requirement insofar as the deposit is refundable.

22. Dubin failed to establish that a less favorable credit arrangement with his advertising agency was caused by Jakobowski's actions or that he was harmed by having to pay cash rather than credit to the agency.

---

**2.** It is difficult to accept Jakobowski's testimony that Wolk never asked him to withdraw the writ, given the fact that sanctions against Wolk would have quickly exceeded the amount of the judgment. However, even assuming the truth of Jakobowski's testimony, the fact that Wolk had been held in contempt was clear notice to Jakobowski that the court considered the writ violative of the automatic stay.

23. Dubin failed to establish that a less favorable arrangement with his dental lab or with the telephone company was caused by Jakobowski's actions.

24. Dubin testified that his emergency need for working capital required him to agree to compromise $6,500.00 in accounts receivable for $4,000.00. No testimony was presented, however, about Dubin's average return[3] on accounts receivable so that it is difficult to assess the degree to which Dubin was injured by the compromise. I find that Dubin lost approximately $1,500.00 by compromising accounts receivable on an emergency basis and that such amount is an appropriate measure of compensatory damages.

25. Dubin was precluded from using the approximately $4,500.00 in his bank account during the period of Jakobowski's violation of the automatic stay. However, no evidence was offered indicating that Dubin did not receive interest on the account for any period or that he was otherwise injured by loss of the use of money.

26. As of the date of trial in this case, Dubin's attorney fees and costs could not be fully computed. Consequently, I will allow Dubin 15 days to file a motion in conformity with the standards set forth in *In re Fine Paper Litigation*, 751 F.2d 562 (3rd Cir.1984) and *In re Meade Land & Development Co.*, 527 F.2d 280 (3rd Cir. 1975) for attorney's fees and costs.

27. Because attorneys fees and costs in this case will amount to a significant sum, an additional award of punitive damages is unnecessary to deter Jakobowski from future misconduct and to punish him for his conduct in this case.

28. Dubin failed to establish that Jakobowski was in contempt of a court order other than the automatic stay insofar as an appeal of the order in question was

taken and a stay pending appeal was entered. Upon resolution of the appeal unfavorably to Jakobowski, he took the steps required to dissolve the writ. Failure to notify Dubin or this court of dissolution of the writ is not itself actionable as contempt of the court order where the order by its terms did not require notice.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this adversary proceeding as a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) insofar as it relates to enforcement of the automatic stay and orders duly entered by this court.[4]

2. Jakobowski deliberately and willfully violated the automatic stay by failing to dissolve the writ of execution on Dubin's business bank account after February 27, 1987, and by filing a state court pleading in aid of execution with knowledge of the existence of the stay. Jakobowski's conduct constituted civil contempt.

3. For deliberate and willful violations of the automatic stay constituting civil contempt, compensatory damages as well as costs and attorneys fees are appropriate relief, even absent the operation of 11 U.S.C. § 362(h). This court has the power subject to Bankr. Rule 9020 to remedy civil contempt.

4. Dubin established compensatory damages in the total amount of $2,550.00.

5. Dubin is entitled to judgment against Jakobowski in the amount of $2,550.00 plus attorneys fees and costs.

6. Dubin failed to establish that Jakobowski was in contempt of a court order.

## DISCUSSION

This case requires me to resolve several issues related to liability for violations of

---

**3.** Similarly, no testimony was offered as to the present value of the accounts receivable on the date on which they were collected.

**4.** Judge Fullam has held, in affirming Judge Goldhaber's order of April 26, 1984 that this is a core proceeding. *Dubin v. Jakobowski*, C.A. No. 84–3022, Memorandum and Order (E.D.Pa. February 8, 1985). That holding constitutes law of

the case. *See e.g. Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3rd Cir.1982). Moreover, at least one court of appeals has explicitly held that a proceeding "to prosecute a violation of the automatic stay" is a core proceeding. *Budget Service Co. v. Better Homes of Virginia*, 804 F.2d 289 (4th Cir.1986).

the automatic stay arising prior to passage of 11 U.S.C. § 362(h). Because I do find the defendant liable, I must also resolve certain issues involving my power to grant relief to the debtor.

Much of the applicable law on the issue of liability was set out in my prior opinion in this case which resolved defendant's motion to dismiss.

Actions by creditors to collect a debt from the debtor, taken after the filing of a bankruptcy petition, are null and void and of no legal effect. *See, e.g. Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982); *In re Eisenberg,* 7 B.R. 683 (Bankr.E.D.N.Y.1980). These actions are invalid even though the creditor had no notice of the bankruptcy filing. *In re Miller,* 22 B.R. 479 (D.Md.1982); *In re Dennis,* 14 B.R. 125 (Bankr.E.D.Pa. 1981); *In re Eisenberg.* The lack of notice on the part of the creditor means only that his action was not willful and therefore not contemptuous. *See Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *In re O'Connor,* 42 B.R. 390 (Bankr.E.D.Ark. 1984); *Matter of Endres,* 12 B.R. 404 (Bankr.E.D.Wis.1981).

Once a creditor has been notified of the bankruptcy filing, the creditor has a duty to restore the status quo; that is, the creditor should undo its postpetition collection activities without the debtor having to seek affirmative relief from bankruptcy court. *In re Miller; In re Lowry,* 25 B.R. 52 (Bankr.E.D.Miss. 1982); *In re Elder,* 12 B.R. 491 (Bankr. M.D.Ga.1981); *Matter of Endress. See also In re Conti,* 42 B.R. 122 (Bankr.E. D.Va.1984).

\* \* \* \* \* \*

The failure of the creditor or the creditor's attorney to abide by the obligation imposed by orders of this court or by the requirements of § 362(a) entitles the debtor to provable compensatory damages. *Matter of Carter,* 691 F.2d 390 (8th Cir.1982); *Borg–Warner Acceptance Corp. v. Hall; In re Miller; see In re Demp,* 23 B.R. 239 (Bankr.E.D.Pa. 1982); *In re Walker,* 7 B.R. 216 (Bankr. R.I.1980). *See also In re Damon,* 40 B.R. 367 (Bankr.S.D.N.Y.1984).

*In re Stephen W. Grosse, P.C.,* 68 B.R. 847, 850–51 (Bankr.E.D.Pa.1987) (footnotes omitted). *See also In re Ward,* 837 F.2d 124 (3rd Cir.1988) (foreclosure sale held without knowledge of automatic stay "was void and without effect").

█ Because the alleged violation of the stay arose prior to the effective date of 11 U.S.C. § 362(h),[5] I must consider the standard for liability in the absence of statutory guidance. In *In re Wagner,* 74 B.R. 898, 902 (Bankr.E.D.Pa.1987), I concluded:

Prior to the enactment of 11 U.S.C. § 362(h), parties aggrieved by a violation of the automatic stay ordinarily invoked the remedy of civil contempt. *See* Kennedy, *The Automatic Stay in Bankruptcy,* 11 U.Mich.J.L.Reform, 177, 259– 66 (1977). In order for a party to be held in civil contempt, a court must find that the party violated a specific and definite court order and that the party had knowledge of the order sufficient to put him on notice of the proscribed conduct. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Mercer v. D.E.F., Inc.,* 48 B.R. 562 (Bankr.D.Minn. 1985); *In re Damon,* 40 B.R. 367 (Bankr. S.D.N.Y.1984); *Matter of DePoy,* 29 B.R. 466 (Bankr.N.D.Ind.1983); *In re Demp,* 23 B.R. 239 (Bankr.E.D.Pa.1982). *See also Kellogg v. Chester,* 71 B.R. 36, 38 (N.D.Tex.1987) (level of knowledge for finding of civil contempt is "not high" and good faith is irrelevant).

█ Thus, the automatic stay, 11 U.S.C. § 362(a), constitutes an injunction with the force of an order of this court, knowing

---

**5.** 11 U.S.C. § 362(h) provides:
An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees and in appropriate circumstances, may recover punitive damages.

violation of which gives rise to the remedy of civil contempt.[6]

■ In the proceeding at bench it is undisputed that neither Jakobowski nor Wolk, his client, was informed of the bankruptcy petition at time of filing. Similarly, neither Jakobowski nor Wolk had knowledge of the bankruptcy when Dubin's account was garnished. However, both Wolk and Jakobowski were given notice of the bankruptcy one week later, on January 30, 1987.

Knowledge of the bankruptcy filing has been held to constitute the legal equivalent of knowledge of the automatic stay. *See In re Zartun*, 30 B.R. 543 (Bankr. 9th Cir.1983); *In re Wagner. See also In re Bragg*, 56 B.R. 46 (Bankr.M.D.Ala.1985).

As of that date, Wolk was under an affirmative obligation to dissolve the writ. *In re Stephen W. Grosse, P.C.*, 68 B.R. at 850; *In re Miller*, 22 B.R. 479 (D.Md.1982); *In re Lowry*, 25 B.R. 52 (Bankr.E.D.Miss. 1982). Here, that obligation was made even clearer to Wolk when he was held in contempt by Judge Goldhaber on February 27, 1984, and ordered to pay *in terrorem* damages for each day past March 2, 1984 until the writ was dissolved. Jakobowski denies, however, that Wolk ever affirmatively asked him to dissolve the writ, although he admits Wolk informed him of the order of February 27, 1984.

■ Jakobowski essentially argues that because Wolk never asked him to dissolve the writ and because Jakobowski was not Wolk's bankruptcy counsel, he did not violate the stay. I find these arguments disingenuous. It strains credibility to assert that Wolk did not request that Jakobowski dissolve the writ in the face of court order requiring him to do so or pay

$200.00 daily damages for contempt.[7] Moreover, Jakobowski testified that he alone, as Wolk's attorney in the execution proceeding, could dissolve the writ and that he was aware of the order holding Wolk in contempt. He was thus aware of this court's mandate that the writ be dissolved and admittedly he was the only one who could do so. As of the date that he became aware of the court's order of February 27, 1984, it was abundantly clear to Jakobowski not only that the existence of the writ violated the automatic stay, but also that he had an affirmative obligation to undo the writ and thus release funds which had become property of the bankruptcy estate. Failure to act under such circumstances constitutes proscribed conduct giving rise to the civil contempt remedy. *In re Miller; Matter of Behm*, 44 B.R. 811 (Bankr.W.D. Wis.1984); *In re Lowry; In re Elder*, 12 B.R. 491 (Bankr.M.D.Ga.1981).[8] *See also In re Aponte*, 82 B.R. 738 (Bankr.E.D.Pa. 1988). Jakobowski is not insulated from civil contempt for violating the automatic stay because he was the attorney for the creditor rather than the creditor himself. *In re Rhyne*, 59 B.R. 276 (Bankr.E.D.Pa. 1986); *In re Demp*, 23 B.R. 239 (Bankr.E. D.Pa.1982).

■ Jakobowski's position is even more transparent in light of his conduct subsequent to February 27, 1984. Not only did he fail to dissolve the writ, but, in fact, he filed an affirmative pleading in state court seeking supplementary relief in aid of execution. Jakobowski cannot and does not attempt to argue that he was without knowledge of the automatic stay when that pleading was filed. Even assuming *arguendo* that inaction is not cognizable as civil contempt for violating the automatic

---

**6.** Even if this case had arisen after passage of 11 U.S.C. § 362(h), the civil contempt remedy would still be viable. *See Wagner*, 74 B.R. at 902–03.

**7.** I place no reliance, however, on the hearsay declarations of Wolk contained in his letter to the court of March 1, 1984.

**8.** Because I find that the damages suffered by Dubin accrued regardless of the date on which Jakobowski first became liable for civil con-

tempt, I do not pass on whether Jakobowski was in contempt as of January 30, 1984, when Dubin's attorney first informed him of the bankruptcy, but before there was an express court mandate requiring dissolution of the writ. I note, however, that *Miller, Lowry* and *Elder* suggest that a creditor is liable for failure to restore the status quo upon learning of a debtor's bankruptcy filing even before the court mandates that the creditor act.

stay, Jakobowski unquestionably took affirmative action which violated the stay.

In short, Jakobowski's conduct, at least from February 27, 1984, was a violation of the stay constituting civil contempt. As I stated in *Wagner* 74 B.R. at 902:

> [U]pon a finding of civil contempt, a court may impose a fine or *in terrorem* damages in order to coerce compliance with its orders; it may also award damages to compensate the aggrieved party for any actual loss suffered as well as attorney's fees and costs.

*See also e.g., McDonald's Corp. v. Victory Investments,* 727 F.2d 82 (3rd Cir.1984); *CBS Inc. v. Pennsylvania Record Outlet, Inc.;* 598 F.Supp. 1549 (W.D.Pa.1984).

At least since the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), however, a bankruptcy judge's power to find civil contempt has been hotly debated. *See generally In re Sequoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281 (9th Cir.1987); *In re Haddad,* 68 B.R. 944 (Bankr.D.Mass.1987). Prior to passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), bankruptcy judges were impliedly granted civil contempt powers coextensive with those of Article III courts. *In re Sequoia Auto Brokers,* 827 F.2d at 1287. That grant of power may or may not have been constitutional. *Compare e.g., In re Johns–Manville Corp.,* 26 B.R. 919 (Bankr. S.D.N.Y.1983) (bankruptcy court's contempt power survives Marathon) *with In re Omega Equipment Corp.,* 51 B.R. 569 (D.D.C.1985) (constitution mandates that contempt proceedings not be finally determined in bankruptcy court). *See In re Haddad,* 68 B.R. at 946–47.

█ It is clear, however, that the statutory underpinning for the perceived broad grant of civil contempt power to bankruptcy judges was repealed by Congress in enacting BAFJA.[9] *See In re Sequoia Auto Brokers,* 827 F.2d at 1288. Since that time, courts have generally looked to 11 U.S.C. § 105 as the statutory basis for the civil contempt power of bankruptcy judges. As originally promulgated in 1978, 11 U.S.C. § 105(a) provided:

> The Bankruptcy Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

In enacting BAFJA congress amended section 105(a) to change "Bankruptcy Court" to "Court." Thus, the debate after BAFJA, not only centered upon the constitutionality of a grant of civil contempt power to bankruptcy judges, but also upon whether the text of section 105 could provide the statutory basis for such power. *Compare e.g., In re Better Homes of Virginia, Inc.,* 52 B.R. 426 (E.D.Va.1985) *aff'd on other grounds,* 804 F.2d 289 (4th Cir.1986) *with In re Industrial Tool Distributors, Inc.,* 55 B.R. 746 (N.D.Ga.1985). *See also In re Sequoia Auto Brokers, Ltd.,* 827 F.2d at 1290.

█ Recently, however, the terms and basis of the debate have been altered once again. In 1986, Congress amended 11 U.S.C. § 105(a) to read as follows:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent any abuse of process.

This amendment makes clear that Congress meant section 105 to serve as the statutory basis for the civil contempt pow-

---

9. Although it would be unfair to apply a new remedy such as that found in 11 U.S.C. § 362(h) to Mr. Jakobowski because it was not in effect at the time his violation of the stay occurred, I perceive no unfairness in applying a civil contempt remedy grounded upon the current version of § 105(a) when a different but perhaps unconstitutional basis for the same remedy was in effect at the time the violation occurred. *See Matter of Reynolds,* 726 F.2d 1420 (9th Cir. 1984). *See generally, Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed. 2d 476 (1974).

er of bankruptcy judges. *In re Haddad,* 68 B.R. at 948:

> The second sentence, which was added to § 105(a) by the 1986 Amendments, puts to an end any question as to whether Congress intends the first sentence to invest bankruptcy courts with the power to enforce their own orders. If they can do so *sua sponte,* they certainly can act, as here, upon the motion of a party. Nor can there be any doubt that the reference in § 105(a) to "court" includes a bankruptcy judge. The present bankruptcy case and the underlying adversary proceeding have been referred to this Court by the district court under a general reference, pursuant to 28 U.S.C. § 157. The adversary proceeding, in which the Trustee sought possession of the debtor's home, is a core proceeding which bankruptcy judges may adjudicate, 28 U.S.C. § 157(b)(2)(E). The referral of jurisdiction to adjudicate core proceedings includes the jurisdiction to adjudicate civil contempt arising within the core proceeding. *Tele–Wire Supply Corp. v. Presidential Financial Corp. (In re Industrial Tool Distributors, Inc.),* 55 B.R. 746, 748–49 (N.D.Ga.1985). This is confirmed by 11 U.S.C. § 105(c), added by the 1984 Amendments, which requires reference to the powers of bankruptcy judges under U.S.C. Title 28 for a determination of the extent to which they may exercise powers conferred upon the "court" in title 11. Perhaps most significant, at the time of the passage of the 1986 Amendments, all eleven circuits had adopted a local rule or order referring all cases and proceedings to the bankruptcy judges for their districts. Congress, therefore, must be held to an understanding that the grant of contempt powers to the "court" under the 1986 Amendments was in effect a grant of such powers to bankruptcy judges in core proceedings. In fact, in the only mention of the amendment to § 105(a) in the legislative history to the 1986 Amendments, Sen. Orrin Hatch expressed an understanding that: "[the amendment] allows a bankruptcy court to take any action on its own, or to make any necessary determination to prevent an abuse of process and to help expedite a case in a proper and justified manner." 132 CONG.REC. S 5092 (daily ed. Oct. 3, 1986) (statement of Sen. Hatch) (emphasis added).

*Accord Kellogg v. Chester,* 71 B.R. 36 (N.D.Tex.1987).[10] *Cf. In re Daily Corp.,* 72 B.R. 489 (Bankr.E.D.Pa.1987) (§ 105(a) as amended gives a *bankruptcy* judge the power to dismiss a chapter 11 case *sua sponte.*).

As discussed in *Haddad,* however, the existence of statutory authority to remedy civil contempt does not resolve the question of whether the provision for such authority is constitutional. *In re Haddad,* 68 B.R. at 949: "The question remains: may bankruptcy courts validly exercise [civil contempt] powers under the separation of powers doctrine embodied in Article III of the constitution." *Compare e.g., Kellogg v. Chester,* 71 B.R. 36 (N.D.Tex.1987) (contempt power may be constitutionally granted to bankruptcy judges) *with In re Continental Air Lines,* 61 B.R. 758 (S.D.Tex.1986) (such power is not consistent with the constitution). *Cf. U.S. v. Revie,* 834 F.2d 1198 (5th Cir.1987) (after noting uncertainty in the law, court finds that bankruptcy judges may at least hear contempt proceedings whether or not they can enter binding decisions).

■ Recently amended Bankr.Rule 9020 provides:

> (a) *Contempt Committed in Presence of Bankruptcy Judge.* Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

---

**10.** It is not clear whether the Ninth Circuit Court of Appeals considered the 1986 amendment to 11 U.S.C. § 105(a) in concluding that there is no statutory authority for bankruptcy courts to exercise the civil contempt power. *In re Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281, at 1289–90.

(b) *Other Contempt.* Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.

(c) *Service and Effective Date of Order; Review.* The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

(d) *Right to Jury Trial.* Nothing in this rule shall be construed to impair the right to jury trial whenever it otherwise exists.

The 1987 amendment added subsection (c) and made the rule applicable to both civil and criminal contempt. Subsection (c) permits an entity found in contempt to object to a bankruptcy judge's contempt order. If such objections are filed within 10 days, the objecting party is entitled to review *de novo* by the district court pursuant to Bankr.Rule 9033(d). This procedure is analagous but not identical [11] to the procedure for district court review of bankruptcy court determinations in non-core matters pursuant to 28 U.S.C. § 157(c)(1) which has been held constitutional by numerous courts. *See e.g., In re Production Steel Inc.,* 48 B.R. 841 (M.D.Tenn.1985); *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605 (C.D.Cal.1984); *In re WWG Industries,* 44 B.R. 287 (N.D.Ga.1984); *In re Earle Industries, Inc.,* 71 B.R. 919 (Bankr.E.D.Pa. 1987). *See also United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (upholding constitutionality of provision under which magistrates make recommendations on certain motions in criminal matters subject to objection and district court review *de novo.*)

Because Rule 9020 [12] provides for objections to civil contempt determinations and district court review *de novo,* I conclude that civil contempt orders entered subject to the rule by a bankruptcy judge are con-

11. As stated in 9 *Collier on Bankruptcy* ¶ 9020.06 at 9020–10 (15th ed. 1988) Bankr.Rule 9020:
This subdivision takes no position with respect to whether a contempt matter is core or non-core, but leaves it up to the potential contemnor to decide how it should be treated. If the order entered by the bankruptcy judge is not objected to by the contemnor, the order is treated as final, "and shall have the same force and effect as an order of contempt entered by the district court ..." However, if the contemnor files objections, which are to be prepared in the manner provided in Rule 9033(b), then there is a hearing *de novo* as provided in Rule 9033.
If the contemnor does not file objections within the Rule 9033 time period, apparently that inaction will be deemed to be consent to the power or jurisdiction of a bankruptcy judge to enter an order of contempt. Having foregone the ability to have the matter ultimately deter-

mined by an Article III district court judge, the contemnor could hardly be heard on appeal to contend that the bankruptcy judge was without the power to enter such an order. If, on the other hand, the contemnor desires the matter to be heard by a district court judge, the contemnor has the power to do so by following the procedures set out in subdivision (c) of Rule 9020.

12. The order of the United States Supreme Court which authorized transmittal of the 1987 Amendments to the Bankruptcy Rules to Congress provides that the amended rules, including amended Rule 9020 "shall govern ... insofar as just and practicable all proceedings in bankruptcy cases" pending as of August 1, 1987. I conclude that amended rule 9020 is applicable to this case.

stitutional.[13] *Accord, In re Miller,* 81 B.R. 669 (Bankr.M.D.Fla.1988). *See also In re Barbour,* 77 B.R. 530 (Bankr.E.D.N.C. 1987); *Kellogg v. Chester,* 71 B.R. at 39.

■ In the case at bench, I conclude that Dubin proved compensatory damages in the amount of $2,550.00.[14] Additionally he is entitled to attorneys fees and costs expended in prosecuting this matter to vindicate his rights under the stay.

Dubin, however, also seeks punitive damages. I note that there is a significant body of case law which concludes that I am without the power to award punitive damages as part of a remedy for civil contempt. *See e.g., In re Zartun,* 30 B.R. 543 (Bankr. 9th Cir.1983); *In re Promower, Inc.,* 56 B.R. 619 (Bankr.D.Md.1986) *aff'd.* 74 B.R. 49 (1987); *Matter of Depew,* 51 B.R. 1010 (Bankr.E.D.Tenn.1985); *Matter of DePoy,* 29 B.R. 471 (Bankr.N.D.Ind.1983) These courts express concern that punitive damages would render an otherwise civil contempt remedy one for criminal contempt and that bankruptcy judges are without power to find criminal contempt. That a determination of criminal contempt is inherent in an award of punitive damages is consistent with the distinction between civil and criminal contempt. *See McDonald's Corp. v. Victory Investments, Inc., CBS Inc. v. Pennsylvania Record Outlet, Inc. Accord e.g., Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392 (5th Cir.1987).[15] I note that current Bankr.Rule 9020 does not distinguish between civil and criminal contempt and thus appears to allow bankruptcy judges to find criminal contempt subject to a potential trial *de novo.*

■ I need not, however, reach the issue of whether I have power to award punitive damages for contempt in the case at bench. Attorneys fees and costs in this case are likely to constitute a significant sum.[16] Under these circumstances, the award of attorneys fees and costs will be sufficient to deter Jakobowski from future violations of the automatic stay and to punish him for his conduct in this case. I thus conclude that punitive damages are unnecessary. *See In re Advance Press & Litho, Inc.,* 46 B.R. 700 (D.Colo.1984).

An appropriate order will be entered.

## ORDER

AND NOW, this 8 day of April, 1988, upon consideration,

it is hereby ORDERED that the Chief Deputy Clerk in charge of Bankruptcy Operations shall enter judgment in favor of plaintiff and against defendant in the amount of $2,550.00.[1] It is further ORDERED that plaintiff shall have 15 days from the date of this order to move for attorneys fees and costs.

---

**13.** Congress expressly provided for bankruptcy court enforcement of the automatic stay in 11 U.S.C. § 362(h). At least one court of appeals has found that a proceeding under 362(h) for violation of the stay is constitutional. *See Budget Service Co. v. Better Homes of Virginia,* 804 F.2d 289 (4th Cir.1986). Although section 362(h) is not applicable to this proceeding because it arose prior to the enactment of 362(h) in 1984, I have previously held that Congress intended section 362(h) to coexist with the civil contempt remedy for violations of the stay. *In re Wagner,* 74 B.R. at 902–03.

**14.** Only damages proved with reasonable certainty were awarded. *See Curtis T. Bedwell and Sons, Inc. v. International Fidelity Insurance Co.,* 843 F.2d 683, 689 n. 13 (3rd Cir.1988).

**15.** As I stated in *Wagner* at 903 n. 11:
[i]f nothing else, Section 362(h) lays to rest any doubt about the bankruptcy court's power to award punitive damages for a willful violation of the stay.

**16.** Although I will provide Dubin with an additional 15 days to move for fees and costs, I note that evidence presented at trial suggests that Dubin's legal fees and costs may already exceed $14,000.00 for this matter. Of course, Jakobowski will have an opportunity to respond to any evidence or records submitted by Dubin in support of a motion for fees and such motion will be carefully reviewed.

**1.** This order is subject to the provisions of Bankr.Rule 9020(c).