**In re Daniel and Marla FRY, Debtors.**

**Daniel and Marla FRY, Plaintiffs,**

**v.**

**TODAY'S HOMES, INC. and Citicorp National Services, Inc., Defendants.**

**Bankruptcy No. 83–00784–W.**
**Adv. No. 86–0244–C.**

United States Bankruptcy Court, N.D. Oklahoma.

Oct. 18, 1990.

---

Michael Taylor, Tulsa, Okl., for plaintiffs.

Keith Ward, Citicorp, Tulsa, Okl., for defendants.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

On January 24, 1989, this Court entered a Journal Entry of Judgment which incorporated certain findings of fact and conclusions of law stated on the record in open Court. In the Journal Entry of Judgment the Court found that the Debtors filed their petition in Bankruptcy on June 7, 1983, and that thereafter on June 18, 1983, Citicorp National Services, Inc. ("Citicorp") repossessed the Debtors mobile home and its contents. The Court further found that Citicorp had violated the automatic stay not only when they repossessed the mobile home and its contents with knowledge of the automatic stay, but further violated it when after repeated demands by the Debtors' attorney, failed to return the property wrongfully repossessed. In this Journal Entry of Judgment, the Court made no award of damages and made no express finding of contempt but stated that the damages would be determined in a conversion action between the parties pending in the State Court.

The Journal Entry of Judgment was appealed to the United States District Court and, on November 27, 1989, the District Court remanded the proceeding to the Bankruptcy Court with instructions to the Bankruptcy Court to make a determination as to whether the actions of Citicorp amounted to contempt of court and, further, if contempt was found, to assess appropriate damages.

In compliance with the Order of the District Court the Bankruptcy Court held hearings on August 24, 1990, and on September 20, 1990, for the purpose of determining whether Citicorp was in contempt and whether damages should be assessed against it.

■ In its original Journal Entry of Judgment, this Court found, as a matter of fact, that Citicorp repossessed the mobile home and its contents after having actual notice of the filing of the bankruptcy. The Court further found that Citicorp failed to return the property repossessed upon demand by the Debtors' attorney. This Court now finds that these two violations of the automatic stay were committed knowingly, intentionally, wilfully and with a complete disregard of the rights of the Debtors in the property repossessed. The violation of the automatic stay in this case, therefore, amounts to contempt of court. See *In re Wagner*, 74 B.R. 898 (Bkrtcy.E.D.Pa.1987) where the Court said:

> The importance of the automatic stay was well articulated in the Bankruptcy Code's legislative history:
>
>> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all foreclosure action. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy....
>
> ■ Prior to the enactment of 11 U.S.C. § 362(h), parties aggrieved by a violation of the automatic stay ordinarily invoked the remedy of civil contempt. *See* Kennedy, *The Automatic Stay in Bankruptcy*, 11 U.Mich.J.L. Reform 177, 259–66 (1977). In order for a party to be held in civil contempt, a court must find that the party violated a specific and definite court order and that the party had knowledge of the order sufficient to put him on notice of the proscribed conduct....

In the case of *In re Grosse*, 84 B.R. 377 (Bkrtcy.E.D.Pa.1988), the Court said:

> Once a creditor has been notified of the bankruptcy filing, the creditor has a duty to restore the status quo, that is, the creditor should undo its postpetition collection activities without the debtor having to seek affirmative relief from bankruptcy court....

Thus, the automatic stay, 11 U.S.C. § 362(a), constitutes an injunction with the force of an order of this court, knowing violation of which gives rise to the remedy of civil contempt....

See also, *In re Miller*, 22 B.R. 479 (Bkrtcy. D.Md.1982); *In re Ellis*, 66 B.R. 821 (N.D. Ill.1986); *In re Computer Communications, Inc.*, 824 F.2d 725 (9th Cir.1987).

■■■ Having found that the actions of Citicorp amount to contempt of court, this Court must next fix the damages. The Debtors ask for actual damages and attorney fees and punitive damages. It must first be noted that § 362(h) of the Code, which allows an individual injured by a wilful violation of the stay to recover actual damages, attorney fees and punitive damages, was not in effect at the time this case was filed, and therefore has no application to the present proceeding. Prior to the passage of § 362(h), most courts held that bankruptcy courts could punish for contempt without reference to any statutory authority. See *Wagner* and *Grosse*, supra. Some courts held that the power to punish or assess damages come from § 105(a) of the Code, which is as follows:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process....

See *In re Haddad*, 68 B.R. 944 (Bkrtcy.D. Mass.1987).

All of the cases hold that the party injured by violation of the automatic stay can recover actual damages and attorney fees. See *In re Computer Communications, Inc.*, *In re Grosse*, and *In re Wagner*, supra. The more disputed issue is whether this Court in a pre–362(h) case has the power to award punitive damages if the

facts would otherwise justify the imposition. The Court in *Wagner*, supra, came to the conclusion that punitive damages could be awarded by the bankruptcy court upon a finding of contempt: [1]

... Upon a finding of civil contempt, a court may impose a fine or *in terrorem* damages in order to coerce compliance with its orders; it may also award damages to compensate the aggrieved party for any actual loss suffered, as well as attorney's fees and costs. *E.g. Matter of Depoy*....

Finally, I must determine the amount of damages, the Debtor is entitled to actual damages, punitive damages, attorney's fees and costs....

See also *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306 (11th Cir.1982); *In re Asters*, 11 B.R. 483 (Bkrtcy.D.R.I.1981) and *In re Augustino Enterprises, Inc.*, 13 B.R. 210 (Bkrtcy.D.Mass.1981).

In the case of *In re Grosse*, supra, the Court discussed the disagreement over whether bankruptcy courts can award punitive damages as a remedy for civil contempt. He concluded that the issue was moot in his case because actual damages and attorney fees were of a substantial amount and were sufficient to compensate the debtor. The court, however, concluded that since the enactment of Bankruptcy Rule 9020, the bankruptcy court should be allowed to award punitive damages since any finding of contempt was reviewable de novo by an Article III District Court. Said Rule is in part as follows:

(b) Other Contempt. Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the prepa-

---

1. The violation of the stay occurred post–362(h) but the Court imposed sanctions including punitive damages for civil contempt as the law existed pre–362(h).

ration of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.

(c) Service and Effective Date of Order; Review. The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033....

Based upon these authorities, the Court will find that it has the power under appropriate circumstances to award punitive damages.

The final issues to be decided are the amount of the actual damages, attorney fees and punitive damages.

■ *Actual Damages.* The Court finds that the taking of the mobile home itself by Citicorp in violation of the automatic stay did not cause the Debtors any actual damages. At the time of the wrongful repossession, the Debtors were either living out of town where the husband worked, or were living with the wife's parent. The utilities had been cut off at the mobile home and the Debtors had removed the washer and dryer to a relative's home. The repossession of the mobile home therefore, caused no monetary damage, or at least the Debtors did not prove any.

■ Citicorp, however, did repossess the contents of the mobile home upon which it did not have a security interest. The Debtors, therefore, suffered actual damages for the value of the contents that were repossessed and never returned or damaged. Plaintiff's Exhibit 1 is an appraisal by

Douglas D. Ward of the value of the property taken by Citicorp and never returned or returned in a damaged state. Citicorp had no lien on this property and therefore the taking amounted to a common law conversion and the Debtors are entitled to the actual value of the property. The appraisal fixes the value at $5,342.95, at market. There was conflicting evidence as to what property was never returned and as to the value of the property. This Court, based upon the testimony, finds that the value of the property wrongfully taken and never returned by Citicorp, upon which it did not have a security interest is $5,000.00. The Court will also allow interest from the date of the taking, which is June 18, 1983, at the rate of 10.00 percent per annum up until the date of the entry of this judgment. This amounts to within a few days of seven and one-third years. The total interest therefore would be $3,665.00 or total damages of $8,665.00.

■ The next issue to be determined is whether punitive damages should be allowed and, if so, the amount. The test for determining whether punitive damages should be allowed has been stated in many cases. A good statement is contained in *In re Wagner*, supra, as follows:

Since the debtor seeks an award of punitive damages, I must also briefly address the circumstances in which such an award is appropriate ... In Cochetti, the Third Circuit observed that punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are 'reserved ... for cases in which the defendant's conduct amounts to something more than a bar violation justifying compensatory damages or injunctive relief.' *Id.* at 106. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so. *Id.*

See also, *Garland Coal & Mining Co. v. FEW*, 267 F.2d 785 (10th Cir.1959) where the court said:

We do not agree with defendants' contention that there was insufficient evidence to sustain a verdict for exemplary damages. 23 Okl.Stat.Ann. § 9 provides that in an action for the breach of an obligation other than under a contract, 'where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in additional to the actual damages, may give damages for the sake of example, and by way of punishing the defendant'. It has long been recognized that the theory of exemplary damages such as provided for in the foregoing statute is to set an example and punish the offender for the general benefit of the public....

The court then quoted the following statement from *Keener Oil & Gas Co. v. Stewart*, 172 Okl. 143, 45 P.2d 121:

'... "the act which constitutes the cause of action must be actuated by, or accompanied with, some evil intent, or must be the result of such gross negligence, such disregard of another's rights, as is deemed equivalent to such intent"....'

See also *Fuller v. Neundorf*, Okl. 293 P.2d 317; *Fuller v. Neundorf*, Okl. 278 P.2d 836; *Ruther v. Tyra*, 207 Okl. 112, 247 P.2d 964. It is quite evident from these Oklahoma decisions that exemplary damages are not evidence of fraud, malice or gross negligence, but may be allowed then there is evidence of such reckless and wanton disregard of another's rights that malice and evil intent may be inferred....

This Court finds that the actions of Citicorp in the present case meet the standards needed to impose punitive damages. Citicorp acted with actual knowledge that they were violating a federal protected right and acted with a reckless disregard to the rights of the Debtors in the property. Their conduct was oppressive and egregious and punitive or exemplary damages should be awarded to set an example and to punish the offender. The evidence here shows a complete reckless and wanton disregards of another's rights and evil intent may be inferred.

The evidence which gives rise to this conclusion is clear and compelling. After having received notice of the filing of the bankruptcy, Citicorp, not only repossessed the Debtors' home, and thereby, except for the charity of relatives, would have put the Debtors and their newborn child into the street, but also repossessed all of their property, upon which they had no security interest. This property included family heirlooms, picture books, newly bought baby clothes and furniture, household furniture, fishing equipment, arrowhead collections, clothing, and literally everything the Debtors had in the world. Not only did Citicorp do this, but when it was brought to their attention by Debtors' attorney and a demand for return of the property was made, Citicorp refused, stalled and took no action. Debtors' attorney testified that over 200 phone calls were made with no results.

Finally, eight months after the wrongful repossession, the wife was taken to a mini storage bin and shown the property. At that time, she was shocked and outraged. Her property had been carelessly and recklessly and with complete disregard to its safety, thrown into the bin and scattered about. Some of the glass items had been broken and much of it was not present. Also, it had been co-mingled with property belonging to others. The Debtor removed some minor items of clothing and then attempted to take pictures of the bin. Employees of Citicorp refused to allow her to take pictures or to remove any more property unless she signed a complete release. The wife refused to do that and left. It was not until two and one-half years later, in 1986, that another small amount of property was returned.

■ The Court feels that these actions require the imposition of punitive damages. In determining the punitive damages, the Court will take into consideration the acts of Citicorp and its financial standing. The actual Defendant in this case is Citicorp National Services, Inc. (formerly Citicorp Acceptance Company, Inc.), a wholly owned subsidiary of Citicorp, Inc., which is the

largest banking corporation in America.[2] Considering all of the evidence in this case, this Court fixes the punitive damages at $25,000.00.

■ The Court will also make an award of attorney fees. The original attorneys for the Debtors were T.H. Wagenblast and Arla H. Blasingim. Ms. Blasingim has filed an itemization of her time which comes to a total of 96.85 hours and a requested fee of $100.00 an hour for $9,685.00. The Court received a request for payment of expenses from Thomas H. Wagenblast of $1,589.00. Mr. Wagenblast also filed a request for fees showing that he performed 19.3 hours of work at $150.00 an hour or a fee of $2,765.00.

In 1986, the Michael Taylor and Associates law firm assumed representation of the Debtors. Michael Taylor has filed two petitions for fees, the first alleging that he performed 95 hours at $100.00 an hour and requesting total fees of $9,500.00; the second alleges an additional 6 hours and requests an additional fee of $1,000.00. David Bean of the Taylor law office has filed an application for fees stating that he performed 140.0 hours at $100.00 an hour and requests $14,000.00. Additionally, Bean filed an affidavit showing expenses incurred in the amount of $3,739.33.

The Court in allowing fees will apply the standards set forth in *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983). These standards include the number of hours reasonably spent in representing the client, the hourly rate to be applied, the results accomplished and the contingency or certainty of compensation.

■ In the present case, Debtors' attorneys have achieved excellent results and because of the financial condition of the Debtors their fees were substantially contingent upon recovery. The issues were difficult and Citicorp presented a strong defense at every stage of the proceeding. This Court finds also that the hours alleged to be spent were actually spent and the only issue in determining the fees is whether the hours were reasonably spent. That is, could this matter have been handled in a more reasonable and efficient manner. This Court believes that it could. When the automatic stay is violated, a debtor should immediately present the matter to the bankruptcy court with an application for enforcement of the stay and appropriate sanctions. In 99 percent of the cases, the matter can be handled summarily, expeditiously, and without much lawyer or court time.

In the present case, the Debtors, upon advice of their attorneys, did not bring the alleged violation of the stay to the attention of the bankruptcy court until three years after the occurrence. In the meantime, much lawyer time had been spent in the state court on a suit for conversion. The total amount of fees requested by the Debtors' attorneys is $36,950.00. This Court feels that such request is excessive and will reduce it by one-half and will allow fees in the amount of $18,475.00. The length of the litigation obviously cannot be blamed entirely on the Debtors attorney. At all times, Citicorp has absolutely refused to acknowledge the seriousness of the situation or that they should pay any substantial damages. Right from the very beginning, Citicorp has treated the Debtors, the automatic stay and the seriousness of the matter with complete contempt and this attitude of "we haven't done anything wrong" is the main cause of the extensive litigation. This Court will allow the request for expenses by both Michael Taylor and Associates and the Wagenblast firm in the total amount of $5,328.00.

This Court will therefore enter a separate order in compliance with this statement finding Citicorp to be in contempt of court for its violation of the automatic stay and enter judgment against it for actual damages, punitive damages, attorney fees and the expenses in the total amount of $57,468.33. Under Rule 9020, the Clerk shall serve a copy of the judgment order of contempt upon Citicorp and its attorneys

2. No evidence was introduced on the size of Citicorp, Inc., however, the Court will take judicial knowledge of it.

**434**

and shall have effect as an order of contempt, unless within 10 days Citicorp serves and files with the Clerk, objections. If timely objections are filed, the Order shall be reviewed as provided in Rule 9033. Rule 9033 provided for de novo review in non-core proceedings by the District Judge.