Asille JORDAN–STARR,
Plaintiff/Appellant,

v.

NORWEST BANK–REGION VIII,
Defendant/Appellee.

Civ. A. No. 93–K–1411.

United States District Court,
D. Colorado.

Feb. 11, 1994.

Andrew L. Cameron, Denver, CO, for plaintiff/appellant.

Kevin E. Burr, Denver, CO, for defendant/appellee.

## MEMORANDUM DECISION
## ON APPEAL

KANE, Senior District Judge.

In this bankruptcy appeal, Asille Jordan–Starr challenges the bankruptcy court's findings of fact and conclusions of law following trial on Jordan–Starr's complaint for turnover, contempt, damages and punitive damages arising out of Norwest Bank's violation of a Notice of Automatic Stay pursuant to 11 U.S.C. § 362(a). Jordan–Starr argues that, since the bankruptcy court found that the Norwest's violation was willful and intentional, the damages awarded to her were inadequate and that, in addition to actual damages, the court should have awarded her punitive damages. I reverse and remand.

### I. Facts

The parties stipulated to the facts relating to Jordan–Starr's purchase of the 1992 Honda Civic DX automobile ("the Honda"), her subsequent failure to make payments, Norwest's repossession of the Honda and obtaining of a Certificate of Title from the State of Montana, Jordan–Starr's Petition for bankruptcy under Chapter 13, the notice of automatic stay to Norwest, and Norwest's subsequent sale of the Honda. I adopt these stipulated facts contained in the bankruptcy court's ruling after trial. (See R.Doc. 17 at 1–3.)

The bankruptcy court determined that Norwest properly repossessed and retitled the Honda and that Jordan–Starr had no right to physical possession of the Honda as of the date of filing of her bankruptcy petition. (Id. at 7.) Jordan–Starr nevertheless retained the right to redeem the Honda by paying the outstanding balance of the debt. (Id.) This redemption right, which continued in effect until the date on which Norwest sold the Honda, was the property of Jordan–Starr's bankrupt estate as it constituted an equitable interest in the vehicle. (Id.)

The court concluded that Norwest's post-petition sale of the Honda to a third party, at a time when Norwest knew of the bankruptcy filing, was a willful violation of the automatic stay provisions of § 362(a). (Id. at 8–9.) The court stated that, since the violation

was willful, if Jordan–Starr was injured, she was entitled to damages. (*Id.* at 9.) The court did not explain the measure of damages, but merely evaluated them on the basis of evidence of Jordan–Starr's expenditure on public transportation between September 1992, when Norwest repossessed the Honda, and April 1993, when Jordan–Starr purchased another vehicle. (*Id.* at 10.) The court then declined to award punitive damages to Jordan–Starr, stating only that "the Court finds that the evidence did not demonstrate the Bank's conduct to be so egregious as to warrant punitive damages." (*Id.*)

## II. *Standard of Appellate Review*

In reviewing a bankruptcy court decision, I must accept the court's findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous. Bankr.R. 8013; *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.),* 798 F.2d 396, 399 (10th Cir. 1986). I must also give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses. *Id.* Conclusions of law are reviewed *de novo. Id.* at 399–400.

## III. *Merits*

### A. *Actual Damages*

■ Jordan–Starr first argues that the bankruptcy court's award of actual damages was inadequate. Section 362 of the Bankruptcy Code imposes an automatic stay of proceedings against a debtor immediately following the filing of a bankruptcy petition. 11 U.S.C. § 362(a). Section 362(h) provides for the consequences of violating such automatic stay:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

*Id.* § 362(h).

After finding that Norwest willfully violated § 362, the bankruptcy court awarded Jordan–Starr actual damages of $1,196 plus attorney's fees. It found:

1. Jordan–Starr described this vehicle as a "piece of junk." (Tr. at 27.)

The Debtor provided very little evidence as to the amount of damages she suffered. The Debtor's direct testimony set forth the only specific information on this point. She stated that, following the repossession, she took the bus to work three or four times per week. She also stated that she took a taxi to work on Saturdays, at the cost of $12.00 each way. She asserted that her sister took her to work, for payment of $5.00, but did not indicate how many times this occurred. She testified that she acquired another vehicle in April of 1993, using her tax refund to pay the purchase price of $1,900.00. This meager evidence permits the Court to estimate that the Plaintiff spent approximately $171.00 per month for her transportation need during the months between September, 1992 and April, 1993, for total damages of $1,197.00. This figure is based on an estimate of $35.00 per month for bus charges, $24.00 per week for taxi charges, and $10.00 per week for payment of the Plaintiff's sister, for a period of 28 weeks. After April, the evidence shows no further damages, because the Plaintiff purchased a new car, using what would have been disposable income and thus estate property to pay for it.

(R.Doc. 17 at 10.)

The bankruptcy court's finding does not take into account the nature of the "new car" which Jordan–Starr purchased, as opposed to the repossessed 1992 Honda which was under warranty, i.e. what she lost as opposed to what she gained. The court's assessment of actual damages should take into consideration the evidence that the only replacement vehicle that Jordan–Starr could afford was a $1,900 used 1982 Ford Tempo with 90,000 miles on the odometer and in need of mechanical repairs.[1] (Tr. at 21–24).

Additionally, the bankruptcy court should have taken into account Jordan–Starr's testimony that, between September 1992 and April 1993, she spent between $370 and $450 per month on transportation (*Id.* at 21);[2]

2. Jordan–Starr earlier testified that she spent anywhere from $370 to $500 per month. (*See* Tr. at 19 lines 5–7.) Even taking account of the

that Jordan–Starr continues to incur travel expenses in excess of $400 per month (*Id.* at 27); that Jordan–Starr will not be able to afford a new car for seven to ten years (*Id.* at 22); that Jordan–Starr requested the court to award her damages at $400 a month for seven years (*Id.* at 27); that Jordan–Starr's payments to Norwest for the next five and one-half years would have been $361.88 per month (*Id.* at 29); that the Honda, when repossessed, had been involved in an accident but was insured (*Id.* at 83–84); that Jordan–Starr gave Norwest $362 after the notice of default, which Norwest told her it would return but did not (*Id.* at 24–27).

I must remand, directing the bankruptcy court to reassess Jordan–Starr's actual damages, taking all relevant factors into account.

B. *Punitive Damages*

■ Jordan–Starr's second argument is that the bankruptcy court erred in not awarding her punitive damages. Notably, on appeal, I "must accord broad discretion to the trial court's determination [regarding punitive damages] because it 'has had the benefit of hearing the testimony, of observing the demeanor of witnesses and also knows the community and its standards.'" *Fishman v. Clancy*, 763 F.2d 485, 489–90 (1st Cir.1985) citing *Boston & Maine R.R. v. Talbert*, 360 F.2d 286, 291 (1st Cir.1966).

Here, the bankruptcy judge did not articulate its reasons for denying punitive damages. The court found that Norwest "received notice of the bankruptcy filing and of the automatic stay, and its agents intentionally chose to sell the vehicle despite that notice. The Court need go no further in finding that this violation of the automatic stay was willful." (R.Doc. 17 at 9.) Despite this finding, the bankruptcy court's only statement regarding punitive damages was that "the Court finds that the evidence did not demonstrate the bank's conduct to be so egregious as to warrant punitive damages." (*Id.* at 10.)

The bankruptcy court's statement regarding punitive damages was not specific enough to permit a meaningful review on appeal.

Therefore, at minimum, I direct the court to reconsider its denying an award of punitive damages.

Moreover, recent *dicta* indicate that this may be a case where punitive damages should be imposed.

"[P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are 'reserved ... for cases in which the defendant's conduct amounts to something more than a bar (sic.) violation justifying compensatory damages or injunctive relief.' ... To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so."

*Fry v. Today's Homes, Inc. (In re Fry)*, 122 B.R. 427, 431 (Bankr.N.D.Okla.1990) (citing *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 903–4 (Bankr.E.D.Pa.1987)).

The court in *In re Fry* held that "exemplary damages are not evidence of fraud, malice or gross negligence, but may be allowed then (sic.) there is evidence of such reckless and wanton disregard of another's rights that malice and evil intent may be inferred." 122 B.R. at 432. There, the court awarded exemplary damages upon determining that the defendant, after receiving notice of the filing of the bankruptcy, not only repossessed the debtors' home, but also their property upon which the defendant had no security interest.

*In re Culler*, 114 B.R. 10 (Bankr.D.R.I. 1990) concerned facts similar to those in this case. There, the bankruptcy court found that, although the debtors failed to establish that the bank's repossession of a vehicle was with actual knowledge of the bankruptcy filing, the bank received notice of filing more than five weeks before the date on which the vehicle was sold. *Id.* at 10–11. "[B]ased on our finding that the sale was conducted with knowledge of the bankruptcy, and in the absence of a reasonable or credible explanation for the bank's action, we also impose

obvious discrepancy, the bankruptcy court's award does not have a relationship to the uncontroverted evidence of Jordan–Starr as to her actual damages.

punitive damages in the amount of $1000." *Id.* at 11.

Business as usual, including the selection and use of a foreign state's new title procedures, may very well be considered as extreme or total indifference to the rights of the trustee as well as the debtor thus justifying a significant award of punitive damages sufficient to dissuade a bank from its economically generated insouciance.

### IV. Conclusion

I reverse and remand and direct the bankruptcy court to reassess Jordan–Starr's actual damages, taking all relevant factors into account, to reassess its denial of punitive damages and, if punitive damages are denied, to articulate specific reasons for denial.